(No. 34293.—

VALIER COAL COMPANY, Appellant, *vs.* THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed May 23, 1957.*

WALTER McFARLAND, C. W. KROHL, and J. I. SHIELDS, all of Chicago, (ELDON MARTIN, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff, Valier Coal Company, instituted proceedings in the circuit court of Cook County under the Administrative Review Act to review a retailer's occupation tax assessment of $90,093.83 by defendant Department of Revenue. The court confirmed the action of the Department of Revenue and entered judgment against plaintiff in the amount of the assessment, from which judgment plaintiff has appealed to this court.

The facts are uncontroverted, and the cause presents the question of law of whether plaintiff's operation of selling coal to the Chicago, Burlington and Quincy Railroad Company, its parent corporation, under the conditions imposed by the Illinois Public Utilities Commission, constituted being engaged in the business of selling tangible

personal property at retail within the terms of the Retailers' Occupation Tax Act. Ill. Rev. Stat. 1951, chap. 120, pars. 440-453.

From the record it appears that some time prior to 1917 the Chicago, Burlington and Quincy Railroad Company, hereinafter referred to as the Burlington, had acquired beneficial ownership of coal lands in southern Illinois in order to have an assured source of coal supply. When a coal shortage threatened in 1917, it was decided that the lands would be utilized, and the plaintiff, Valier Coal Company, was organized by the Burlington as a wholly-owned subsidiary under the General Corporation Act. However, before the Burlington-owned coal properties could be transferred to plaintiff, it was necessary to have the approval of the Illinois Public Utilities Commission, predecessor of the present Illinois Commerce Commission. The commission's order of approval, however, imposed the following restrictive conditions:

"(3) This order is issued on condition that the price to be paid by the Chicago, Burlington & Quincy Railroad Company for coal purchased from the Valier Coal Company shall not exceed the actual cost of production to the coal company plus an amount sufficient to pay interest on the investment and to provide a sinking fund.

"(4) It is further ordered that this order is granted upon the further condition that the Valier Coal Company shall not sell or supply coal to the general commercial trade."

Several supplemental orders were issued by the commission which in no way modified these conditions, but merely allowed exchange operations with other coal mine operators. However, under union agreements, and in accordance with the common practice of the industry, plaintiff was required to sell small amounts of coal to its employees, on which it paid the retailers' occupation tax after that statute was enacted.

Production of coal by plaintiff was commenced in 1920 and ended on August 15, 1949, when plaintiff closed its mine pending completion of its sale to the Old Ben Coal Company. The sale was approved by the Illinois Commerce Commission on September 16, 1949, and was consummated by conveyance on January 15, 1952.

Between 1920 and 1949, plaintiff sold coal to the Burlington at a price determined by the actual cost of production, without taking into consideration any element of profit. Moreover, since income realized by plaintiff from other sources was deducted from the cost of operation in computing that net cost, plaintiff did not even recover the full cost of operation; consequently, until production of coal ended on August 15, 1949, plaintiff had no net income. This low cost of fuel, paid by the Burlington, insofar as it affected the railroad's production cost and rates, did confer a public benefit.

Prior to 1951 no claim for retailers' occupation tax, predicated upon the sales to the Burlington, was ever asserted by the defendant Department. However, on December 31, 1951, a notice of proposed assessment was mailed, covering the retailers' occupation taxes on such operations for the period extending from July 1, 1948, to and including July 31, 1951. The notice was received by plaintiff on January 2, 1952, and a protest filed on January 16, 1952. After a hearing by an examiner for defendant on December 19, 1952, a final assessment was sent to plaintiff on March 25, 1953, which, together with penalties, amounted to $90,093.83.

In a proceeding to review that assessment in the circuit court under the Administrative Review Act, plaintiff argued that the assessment was illegal and void under the act, and also that the part of the assessment relating to transactions which occurred more than 3 years prior to January 2, 1952, was barred by the terms of the Retailers' Occupation Tax Act.

The circuit court, however, ordered that plaintiff's complaint for relief be denied, that the action of the Department of Revenue be confirmed, and that judgment be entered in favor of defendant and against plaintiff in the amount of $90,093.83.

The propriety of this judgment depends essentially upon whether plaintiff's operations were subject to the terms of the Retailers' Occupation Tax Act. Under section 2 of the act (par. 441,) insofar as applicable to the present inquiry, the tax is levied upon persons engaged in the business of selling tangible personal property for use or consumption and not for resale.

Plaintiff contends that it was not engaged in "business" at retail under the terms of the act, and, therefore, was not subject to the tax. The act, however, does not define the phrase "engaged in the business," and courts, in ascertaining its meaning, have sought guidance from the statutory purpose (*Svithiod Singing Club* v. *McKibbin,* 381 Ill. 194,) and from other sections of the act. (*Continental Can Co.* v. *Nudelman,* 376 Ill. 446.) The only portion of the act relevant to this inquiry is the provision in section 1 (par. 440) that the "isolated or occasional sale of tangible personal property at retail by a person who does not hold himself out as being engaged in * * * selling such tangible personal property at retail does not constitute engaging in" such business. However, the quantity sold is not the test of the applicability of the act. *Svithiod Singing Club* v. *McKibbin,* 381 Ill. 194.

Moreover, in the light of the statutory purpose of relieving property from direct taxation and placing the tax burden upon that class of business which enjoys and benefits from a greater part of government protection, it has been held that the word "business" which, in its usual and popular meaning, refers to a particular occupation or employment habitually engaged in for livelihood or gain, (12 C.J.S. 765,) is used in the act to denote the business

of selling in the "commercial sense." (*Svithiod Singing Club* v. *McKibbin.*) More particularly, the term "business" in the act has been held to refer to a "commercial business, an indispensable criterion of which is that profit is intended." *Snite* v. *Department of Revenue,* 398 Ill. 41, 48.

Plaintiff argues therefrom that since it was precluded by the order of the Illinois Public Utilities Commission from making a profit, its status was comparable to that of the plaintiff in *Svithiod Singing Club* v. *McKibbin.* The court therein held that the plaintiff Svithiod Singing Club, which was chartered as a not-for-profit corporation for the primary purpose of promoting social intercourse and the arts, rather than as a commercial enterprise, was not engaged in "business" under the act by reason of certain sales of food and drink to members, since such sales were merely incidental to the primary social purpose. The decision was predicated on the meaning of the term "business" in the act, which was construed to refer to commercial enterprises in which profit is intended.

In the instant case, however, plaintiff was not chartered as a social corporation, as was the Svithiod Singing Club, and plaintiff's operations of mining and selling coal to the Burlington, while without profit, were clearly commercial in character, rather than in aid of any social purpose. Consequently, the *Svithiod case* cannot be deemed to be conclusively determinative of plaintiff's status under the act.

Nor do we find that the cases cited by defendant conclusively establish plaintiff's tax liability. Defendant relies principally upon the case of *Continental Can Co.* v. *Nudelman,* 376 Ill. 446, where the court held that a manufacturing concern, selling food to employees at a restaurant which it deliberately operated without profit, was engaged in a retail business, and consequently was subject to the retailers' occupation tax. The issue in that case, however, was whether the retailers' occupation tax could apply to a particular operation of a commercial enterprise whose principal opera-

tions were not subject to the tax, and it was held that the term "business" in the act could include a part of the business carried on as an incident, or in aid of the primary business.

Although we are in agreement·with this principle, it is apparent it is not determinative of the instant case, where there was no holding out to consumers that plaintiff was engaged in the business of making retail sales for use or consumption, nor was plaintiff privileged to sell to members of the public, or to choose whether or not it would enjoy a profit on the particular operation, as was the Continental Can Company.

In further support of its contention that plaintiff is subject to the Retailers' Occupation Tax Act for sales made to the Burlington, defendant cites the cases of *Superior Coal Co.* v. *Department of Finance,* 377 Ill. 282, and *Superior Coal Co.* v. *Department of Revenue,* 4 Ill.2d 459. The issue in *Superior Coal Co.* v. *Department of Revenue* was whether a wholly-owned subsidiary coal company, which shipped coal on the line of the parent railroad to a point outside of Illinois was exempt from the retailers' occupation tax because of the interstate character of the transactions. The court held that the imposition of that tax would not constitute a burden on interstate commerce, hence the tax was payable.

In the earlier case involving the same Superior Coal Company, the court determined principally that in ascertaining the retailers' occupation tax liability of the company it would not lift the corporate veil. The coal company argued that it and the parent railroad corporation were in fact so integrated that the transactions relating to the transfer of coal were not "sales" within the meaning of the Retailers' Occupation Tax Act. The court, in rejecting that contention, held that the facts did not warrant disregarding the fiction of the corporate entity, since the General Assembly had not seen fit to exclude sales between affiliated

corporations, and in particular from a subsidiary to its parent, the court could not by tortuous construction of law create such an exemption.

It is patent that neither of the *Superior Coal Company cases* considered the issue involved herein of whether the coal company was engaged in "business" under the Retailers' Occupation Tax Act. Moreover, the facts in those cases are clearly distinguishable from those in the case at bar. Although the Superior Coal Company is also a wholly-owned subsidiary which sold coal to a parent railroad corporation, it was not inhibited by its charter, or by orders of a regulatory commission, from engaging in the general trade, or from selling at a profit to its parent company, as was plaintiff in the instant case. The Superior Coal Company not only could but did sell at a profit to the parent railroad corporation. Consequently, those cases in no way constitute binding precedent for the case at bar. Nor do they become precedents merely because they happen to involve a coal company which was a subsidiary of a railroad company.

In analyzing plaintiff's unique status, it appears that when the commission allowed the Burlington to sell the coal lands to plaintiff, it set down certain conditions, from which it may be implied that without the conditions the sale would not have been deemed to be in the public interest. Since those orders, which were within the jurisdiction of the commission, were not appealed from and were accepted and acted upon by the parties, they could neither be subject to collateral attack nor disregarded. *Chicago North Shore and Milwaukee Railroad Co. v. City of Chicago*, 331 Ill. 360; *Illini Coach Co. v. Commerce Com.* 408 Ill. 104.

These conditions, which required plaintiff to sell only to the Burlington railroad, and at essentially the cost of production, were tantamount to prohibiting plaintiff from engaging in business, for the rights to sell to the general trade and to make a profit or realize a gain are ordinarily

incidents of being engaged in the retail business, even though the imposition of the tax does not, and cannot, depend upon whether a profit is actually realized. The mere fact that there were a series of sales to the Burlington did not convert plaintiff's operations into a retail business, for the quantity and continuity of sales cannot be regarded as the controlling factors, or the test of the applicability of the act. *Snite* v. *Department of Finance,* 398 Ill. 41; *Svithiod Singing Club* v. *McKibbin,* 381 Ill. 194.

As hereinbefore noted, although the *ratio decidendi* of the *Svithiod case* cannot be deemed determinative of plaintiff's status herein, nevertheless one of the underlying considerations in the court's determination that the Svithiod Singing Club was not engaged in "business" under the act was that it was restricted by its charter from ever attempting to sell at more than cost. Consistent therewith is the decision in *Snite* v. *Department of Revenue,* 398 Ill. 41, where the court regarded the lack of any such legal restriction on profits as a determinative factor in concluding that the plaintiff therein *was* engaged in business and therefore subject to the retailers' occupation tax.

In the instant case plaintiff was in effect forbidden to engage in the business of selling coal at retail, not by its charter as in the *Svithiod case,* but by competent State authority which prescribed the conditions under which plaintiff could operate. Therefore, plaintiff could not by law follow the kind of occupation which is taxed under the Retailers' Occupation Tax Act. This interpretation is consistent with the principle that taxing laws are to be strictly construed and in cases of doubt are to be construed against the State.

We are constrained to agree with plaintiff, moreover, that it would be anomalous, if not inequitable, if one agency of the State government (the Public Utilities Commission) limited plaintiff's operations to prevent it from engaging in business in an effort to protect the public

interest by insuring low fuel costs for a railroad, and another agency of the State government (the Department of Revenue) held that such limited operations constitute the conduct of a retail business in order to exact a tax.

On the basis of this analysis, it is our judgment that plaintiff's unique status did not constitute being "engaged in the business" of selling tangible personal property at retail, as contemplated by the Retailers' Occupation Tax Act. Under that interpretation it is unnecessary for this court to determine the additional issue of when the assessment may be deemed to have been "issued" by the Department under the terms of the act. Inasmuch as plaintiff was not subject to the Retailers' Occupation Tax Act, the circuit court erred in affirming the assessment of the Department of Revenue and in entering judgment against plaintiff. The judgment is reversed.

*Judgment reversed.*