(Nos. 39221, 39287 cons.—

SOPHIA PHILLIPS, Appellant, *vs.* ILLINOIS BELL TELE-
PHONE COMPANY *et al.,* Appellees.—BENJAMIN F.
FOHRMAN *et al.,* Appellants, *vs.* SAME APPELLEES.

*Opinion filed March 24, 1966.*

HAROLD A. LIEBENSON and ALBERT M. SHEPPARD,
both of Chicago, for appellant Sophia Phillips; and WAR-
REN L. SWANSON, of Chicago, for other appellants.

SIDLEY, AUSTIN, BURGESS & SMITH, of Chicago,
(DOUGLAS F. SMITH, HOWARD J. TRIENENS, EMERSON T.
CHANDLER, and CLARENCE F. WITTENSTROM, JR., of coun-
sel,) for appellee ILLINOIS BELL TELEPHONE COMPANY.

WILLIAM G. CLARK, Attorney General, of Springfield,
(RICHARD A. MICHAEL, Assistant Attorney General, of
counsel,) for appellee the State Treasurer and Director
of Revenue.

RAYMOND F. SIMON, Corporation Counsel, of Chicago,
(SYDNEY R. DREBIN, and ALLEN HARTMAN, Assistants
Corporation Counsel, of counsel,) for appellees the Acting
Comptroller and Treasurer of the City of Chicago.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

Sophia Phillips, as both a shareholder of Illinois Bell Telephone Company and a private citizen, filed a complaint in the circuit court of Cook County to enjoin the company from paying certain taxes levied on the transmission of messages, and to require their payment by hotels, hospitals, clubs and similar organizations which operate their own switchboards. Also named as defendants were the comptroller and treasurer of the city of Chicago, and the Director of the Illinois Department of Revenue. Shortly thereafter a similar suit was filed in the same court by the operators of a Chicago hotel, naming the same defendants and praying that any excess taxes found to have been paid by Illinois Bell be refunded, not to Bell, but to the various hotel, motel and hospital owners from whom Bell had collected the tax.

A temporary order was entered restraining the acting comptroller and the Director of Revenue from depositing the alleged excess taxes in the general treasury and ordering such sums to be placed in a separate account pending the disposition of this litigation. Motions to dismiss were filed by the defendants, and upon hearing the court allowed the motions, dismissed the complaints, and vacated its prior restraining order. The revenue being involved, plaintiffs prosecuted direct appeals to this court, and we have consolidated them for consideration and opinion.

The Illinois Messages Tax Act, (Ill. Rev. Stat., 1961, chap. 120, pars. 467.1—467.15,) as constituted at the inception of this litigation, levied a tax at the rate of three per cent of gross receipts upon all persons engaged in the business of transmitting messages in the State of Illinois. It also provided that: "The words, 'transmitting messages,' in addition to the usual and popular meaning, shall include the furnishing, for a consideration, of services or facilities (whether owned or leased), or both, to persons in connec-

tion with the transmission of messages where such persons do not, in turn, receive any consideration in connection therewith, but shall not include such furnishing of services or facilities to persons for the transmission of messages to the extent that any such services or facilities for the transmission of messages are furnished for a consideration, by such persons to other persons, for the transmission of messages." In addition, a Chicago occupation tax ordinance levied a tax at the rate of two per cent of gross receipts upon all persons engaged in the business of transmitting messages by means of electricity, and the term "transmitting messages" was defined substantially the same as in the Illinois Messages Tax Act.

The Phillips complaint alleged that Illinois Bell is engaged in the business not only of transmitting messages for persons who do not in turn receive consideration for such transmission, but also of transmitting messages for concerns such as hotels, motels, hospitals, and clubs which operate their own telephone switchboards and charge their patrons for this service. As to the former, it was admitted there is no question but that Illinois Bell is subject to the Illinois and Chicago message taxes aforementioned, but as to the latter, it was alleged that the tax should be paid not by Illinois Bell but by the private. institutions involved. Further, the complaint alleged that the plaintiff owns ninety-six shares of capital stock of the defendant corporation; that a written demand was made by her upon the officers and directors of Illinois Bell to cease the voluntary payment of said taxes for customers who resell such services through their own switchboards; that said officials refused to so act; that corporate funds are being thereby dissipated and unlawfully expended; and that the proceeding was being brought upon behalf of herself and the other shareholders. She prayed that the payment of said excess taxes be enjoined, that a refund be made to Illinois Bell of all taxes improperly paid, and that a writ of *mandamus* be

issued requiring the collection of messages taxes from the private institutions maintaining telephone switchboards and charging their patrons for such service.

The complaint of the hotel owners also set forth many of the factual allegations of the Phillips complaint and, in addition thereto, alleged that plaintiffs operate a telephone switchboard at their hotel and charge for calls made to points outside the hotel; that the Chicago tax is passed on to plaintiffs and other members of their class by Illinois Bell as a separate item of their telephone bills; that the Illinois tax, although not specifically identified in the billings, is nevertheless passed on to plaintiffs and their class by reason of increased telephone rates which have been authorized by the Illinois Commerce Commission; that these taxes so collected by Illinois Bell and paid to the taxing bodies are excessive insofar as they relate to messages for which a charge is made by the subscribers; and that such excess taxes should not be returned by the taxing bodies to Illinois Bell but, instead, should be paid to plaintiffs and members of the class which they represent.

In their motions to dismiss and by their arguments in this court, defendants assert the complaints fail to allege facts showing a right in the plaintiffs to bring the present actions, fail to show any damage to the parties involved, and fail to show there was in fact any reselling of telephone service by the specified customers of Illinois Bell. To the contrary, defendants insist that hotels and other members of such class act as agents of Illinois Bell in collecting charges from the guests, that all equipment, switchboards, and lines in such establishments belong to and are serviced by Illinois Bell, and that the reselling of telephone services is prohibited by the agreements between Illinois Bell and such subscribers and by the rules and regulations of the Illinois Commerce Commission.

It is agreed that Illinois Bell is in the business of transmitting telephone messages and is thereby subject to the

taxes so imposed by the city of Chicago and the State of Illinois if the subscriber does not in turn resell the service. It is equally clear that if the subscriber does resell the service, then the subscriber, not Illinois Bell, is responsible for the payment of the taxes on those particular transmissions. Thus, we must decide whether the facts alleged in the complaint, if accepted as true, show a resale of telephone services by institutions maintaining telephone switchboards upon the premises so as to require the taxing of said institutions separately from Illinois Bell.

In this respect, plaintiffs cite *Liberty National Bank of Chicago* v. *Collins,* 388 Ill. 549, as controlling. We cannot, however, agree with that conclusion. The question in the *Liberty* case was whether a landlord, who admittedly purchased electricity from a public utility and resold it to its tenants, was in the business of selling electricity so as to subject the landlord to the tax imposed under a similar statute upon persons selling or distributing electricity or gas, or transmitting messages by telephone or telegraph. Although this court held in the affirmative, it pointed out that the sale of gas or electricity and the transmission of messages involved two different unrelated activities. It should be noted that some six months later, in 1945, the General Assembly repealed the composite statute and enacted in its place separate statutes for message transmissions, sale of gas and sale of electricity, the first of these being the statute now in question. (The Revenue System of Illinois by Montgomery S. Winning, 120 Smith-Hurd Ill. Anno. Stat., sec. 1—481, p. 57). It must be presumed that the legislature, in making these statutory changes, was aware of our prior decision and thereby intended to treat these businesses as separate and distinct classes. *Illinois Power Co.* v. *City of Jacksonville,* 18 Ill.2d 618; *Modern Dairy Co., Inc.* v. *Department of Revenue,* 413 Ill. 55.

The distinction between the sale of electricity in the *Liberty* case and the present transmission of telephone mes-

sages is inescapable. In the former, the public utility distributed the electricity from its plant to the landlord's premises and was paid for every unit so distributed. There its responsibility ended and the contract was completed. Thereafter, it was the landlord's responsibility to distribute the electricity from his meter over his lines maintained by him to the tenants, who were then charged by the landlord for all the electricity they were furnished. The tenants had no direct obligation or connection with the public utility and no part of the consideration paid by them belonged to the public utility. Thus, in the *Liberty* case, there were in fact two distinct sales, the last of which was taxable under the applicable statute. Clearly, in that situation, the landlord could not be considered as the agent for the public utility.

However, the same situation does not prevail in the present case. Here, the Illinois Bell owns not only the telephone equipment leading to the subscriber's premises but owns all the equipment, lines, and switchboards upon the premises as well. Whereas the landlord in the *Liberty* case was free to resell the electricity as he saw fit, here the subscriber is prohibited from "'reselling" the telephone service by terms of the company's tariff which has been accepted by the customer and approved by the Illinois Commerce Commission. Unlike the *Liberty* case, the duty to repair, inspect, and maintain the transmission equipment and lines upon the subscriber's premises rests solely upon Illinois Bell, and the rates charged by Illinois Bell and approved by the Commerce Commission reflect the obligation of Illinois Bell to pay all transmission taxes. Furthermore, whereas the public utility was never involved in the distribution from the landlord to his tenants in the *Liberty* case, here it is admitted that unless the hotel or similar subscriber renders a charge to the guest, it is an Illinois Bell transmission. For example, following plaintiffs' logic, if the call is made by hotel personnel, or if the hotel decides not to charge a particular guest, or if the call is from room to room within

the hotel, or if the guest makes a credit card call, then this is Illinois Bell business, but if a guest is billed by the hotel for the call then the action is immediately transformed into taxable business of the subscriber. We cannot follow such a devious distinction. Clearly, it is Illinois Bell, not the hotel subscriber, who is in the business of transmitting messages. It may by agreement with the subscribers permit the latter to collect from guests various charges for the transmission of such messages by Illinois Bell, and it may compensate the subscriber for this service by permitting the subscriber to retain a certain portion of those collections or by whatever other means Illinois Bell and the subscriber may agree upon. But this does not in and of itself put the hotel in the business of transmitting messages, and does not render the subscriber liable for the transmission taxes levied by the State of Illinois and the city of Chicago.

Accordingly, we conclude, as the trial court did, that the complaints do not allege facts showing the improper payment or collection of taxes by the respective defendants, and do not therefore state proper causes of action. For this reason, which makes it unnecessary to consider other issues raised, the orders of the circuit court are affirmed.

*Orders affirmed.*