588 So.2d 356 (1991)
ASSOCIATED HOSPITAL SERVICES, INC.
v.
STATE of Louisiana, DEPARTMENT OF REVENUE AND TAXATION.
No. 91-C-0475.
Supreme Court of Louisiana.
October 21, 1991.
Dissenting Opinion November 1, 1991.
Rehearing Denied November 21, 1991.
Marion Van Harrison, for applicant.
John Stassi, Rodney J. Lacoste, Jr., Stassi, Rausch & Giordano, for respondent.
Dissenting Opinion by Justice Lemmon November 1, 1991.
DENNIS, Justice.
The issue is whether a non-profit hospital service corporation, wholly owned by its hospital members, must collect and remit sales taxes on its receipts derived solely from transactions between it and its owner members. In other words, under the circumstances of this case, does the sales tax statute require or permit the state to disregard the separate corporate identity of the service corporation and to consider its receipts of payments from its members for laundry services as non-taxable transactions?
The Department of Revenue and Taxation assessed sales taxes upon the payments *357 made by the owners during the period January 1, 1984 to April 30, 1987. On Associated's protest, the Board of Tax Appeals ruled for Associated. On writ of review, the Civil District Court affirmed. The Fourth Circuit Court of Appeal also affirmed. It accepted Associated's description of itself as merely the alter ego of the hospitals by which it was organized and is owned. It concluded that the receipts from the hospitals were not derived from "sales" and were not taxable under the sales tax statute. Associated Hospital Services, Inc. v. State of Louisiana, Department of Revenue and Taxation, 575 So.2d 448 (La. App. 4th Cir.1991).
We reverse. The laundry service corporation was a legal entity or person separate from the hospital corporations by which it was organized and owned. The sales tax statute requires the collection of a sales tax when one person provides laundry service to another for consideration. It defines the concept of a legal person or entity no more narrowly than does the general law of persons. Accordingly, it does not appear to have been the legislative aim to dispense with the imposition of sales taxes upon transactions between closely related persons, whether natural or legal. Further, the transactions in question clearly do not fall within any of the exemptions or exclusions expressly provided by the legislature. For these reasons we conclude that the transactions were taxable sales of services under La.R.S. 47:302 C.

FACTS
Associated Hospital Services, Inc., a Louisiana non-profit corporation, was organized in 1969 to furnish centralized hospital services exclusively for its members, New Orleans area non-profit hospitals. It owns and operates a central laundry plant which performs laundry services and keeps an inventory of linens on hand for resale to members. Membership is limited to non-profit hospitals and healthcare institutions. Members who made capital investments in the corporation each selected 2 persons to serve on the board of directors. Each of these members, which we shall refer to as "owners," agreed to make long-term commitments to have all its laundry processed at the plant and to share Associated's debt service and operating expenses. These commitments were confected in the form of a sale agreement, a form chosen to satisfy Associated's lender. The agreement states in part:
"Laundry [Associated] agrees to provide Purchaser [the owner] with all of ... Purchaser's requirements for laundry and linen services necessary for the operation of its hospital.... Purchaser covenants and agrees to pay to Laundry, and Laundry agrees to accept from Purchaser, as the price for laundry and linen services ... such sums as shall be necessary to generate sufficient income to Laundry to pay Purchaser's pro-rata costs of operations, including ... Laundry's debt service on Laundry' first mortgage loan together with monthly escrows for taxes and insurance."
Other members, called "associate members," were admitted beginning in 1984 by amendment to Associated's Articles of Incorporation. They made no capital contributions but made annual commitments similar to the one set forth in part above. Annually, each member hospital projected its laundry needs. Associated, in turn, determined its capital and operating budget, and fixed the amount for which each hospital was to be billed for its pro-rata share. Associated billed each member monthly based upon these projections. At year's end, any necessary adjustments were made so that the amount paid by each hospital member was in direct and precise proportion to the amount of laundry processed for it by Associated.
Associated owned both the land and the plant, had its own employees, made purchases, borrowed money and paid its own bills. It filed federal income tax returns. It filed Louisiana sales tax returns relating to sales taxes on the linens it purchased from vendors for resale to members. It did not, however, pay sales taxes applicable to the furnishing of laundry services to its owners.
The Department of Revenue assessed Louisiana general sales tax on payments *358 made by owners for laundry services during the period January 1, 1984 through April 30, 1987. Associated filed a protest and claim for refund, and the Board of Tax Appeals ruled for Associated. On writ of review, the Civil District Court affirmed. The Department appealed to the Fourth Circuit Court of Appeal, which affirmed. The Court of Appeal reasoned that Associated "describes itself as a conduit whereby its members are doing their own laundry at a central location and are paying their pro-rata shares of the cost of operations.... [U]nder these circumstances, the transactions between Associated and its member hospitals do not constitute `sales of services' on which a sales tax can be assessed." 575 So.2d 448, 450 (La.App. 4th Cir.1991).

SALES TAX LAW
The Sales Tax Law defines the taxable sale of laundry services simply as the furnishing by one person to another of laundry services. La.R.S. 47:302 levies "a tax upon all sales of services, as herein defined." La.R.S. 47:302 (West 1990). "Sales of services" means and includes "[t]he furnishing of laundry, cleaning, pressing and dying services." La.R.S. 47:301(14)(e). While the statute contains no definition of the unmodified term "sale" explicitly applicable to the sale of a service, the "sale" for purposes of imposition of the tax upon sales of goods is defined in sweeping terms as "any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever ... for a consideration." La.R.S. 47:301(12). The tax imposed under R.S. 47:302 is collectible from all persons engaged as dealers. La.R.S. 47:303. A "dealer" is any person who sells or furnishes any of the services subject to tax. La.R.S. 47:301(4)(f). A "person" includes "any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, ... instrumentality or other group or combination acting as a unit." La.R.S. 47:301(8). While the statute sets forth various exclusions, some based on the nature or purpose of the transaction and others based on the character of the organizations engaging in the transaction, La.R.S. 47:305-305.49, it does not provide for an exclusion applicable to the furnishing of otherwise taxable services by a non-profit corporation to its member non-profit hospitals or healthcare institutions.
Under the plain wording of the statute, the transactions whereby Associated, a corporation, furnishes laundry services to others are taxable. No exception is found to cover the transactions at issue. Nor is there any evidence of the legislature's intent to exempt any transaction based on common or related ownership of the two entities involved. In light of the fact that transactions between commonly owned legal entities are an everyday commercial reality, we cannot assume that the legislature meant, but simply neglected, to provide for an exemption for such situations. We conclude that the transactions are taxable under the sales tax statute.

EQUITABLE PLEAS
Associated concedes that, as a general rule, transactions between related persons are taxable under the sales tax statute. But the hospital service corporation makes a variety of arguments based on a common theme, viz., that under the circumstances of this case the corporate veil should be pierced, the identity of the service corporation as an entity separate from its owners, the hospital corporations, should be disregarded, and the transactions should be held to be non-taxable intramural transfers of services and payments. The clear legislative intent of the sales tax statute seems to preclude our disregarding the corporate entity, and, even if we were to assume arguendo that the corporation might be allowed to pierce its own corporate veil in exceptional cases, the present litigation is plainly distinguishable from such an extraordinary case.
Associated's argument for disregarding its own corporate entity relies primarily on a line of cases that it contends allows for piercing when the furnisher or seller, a subsidiary, is an entity formed to serve a specific, subordinate purpose of its parent and not an independent business purpose, *359 so that the subsidiary acts as an alter ego of the parent with respect to that function, i.e., Cajun Contractors, Inc. v. Department of Revenue and Taxation, 515 So.2d 625 (La.App. 1st Cir.1987); United Companies Printing Co. v. City of Baton Rouge, 569 So.2d 186 (La.App. 1st Cir.1990), writ den. 572 So.2d 73 (1991); compare Hilton Hotels Corporation v. Traigle, 360 So.2d 245 (La.App. 1st Cir.1978); see also Valier Coal v. Illinois Department of Revenue, 11 Ill.2d 402, 143 N.E.2d 35 (1957); Mapo, Inc. v. State Board of Equalization of California, 53 Cal.App.3d 245, 125 Cal. Rptr. 727 (1975).
The holding in each of those cases was dependent upon a factual situation clearly distinguishable from the circumstances of the present case. In each, the court decided that the subsidiary which "sold" materials or services to its parent, was exempt from the sales tax because the facts preponderated to the conclusion that the subsidiaries were not separate and distinct legal entities from their parents. In Cajun Contractors, supra, the subsidiary and the parent were treated by the corporations themselves as a single entity for insurance, bonding and federal taxation purposes; all of the subsidiary's clerical work was performed by employees of the parent; and the two entities never entered a formal, written agreement regarding the transaction alleged to be taxable. Id. at 628. In United Companies Printing, supra, the parent kept all the accounting records for the subsidiary, supplied the employees that carried out the subordinate functions that the subsidiary was created to perform, made purchases for the subsidiary, and allowed the subsidiary to occupy the parent's building rent-free. In addition, the subsidiary had no bank account of its own and, according to company records, owned no assets. The two entities filed consolidated federal tax returns. In Mapo, supra, the subsidiary owned no materials, kept no books, bore no liability for its operation, recorded no profits, and made no decisions without the approval of the board of directors of its parent. Its parent retained title to its assets and performed all its bookkeeping functions. Its existence was a "temporary, paperwork" one for the purpose of overcoming jurisdictional problems in the carrying out of labor union agreements. Mapo, 53 Cal.App.3d at 249, 125 Cal.Rptr. at 730. In each case the court considered, as only one factor in determining if the subsidiary and parent should be considered one entity, the fact that the transactions resulted in no profit for the subsidiary.
In contrast, it is clear that Associated has acted consistently with an intention to hold itself out and to operate as a separate corporation for every purpose. The record reflects that Associated has adhered to the formalities required of corporations. For example, it has drafted and amended its articles of incorporation in the manner provided by law. The contracts with members, whereby each member committed to pay a pro rata share of expenses and have all its laundry done by Associated, were drafted in the form of a sales contract between Associated and the member. While the form of this contract is not itself determinative of the taxability of the transaction, it is evidence that Associated maintained an identity separate and distinct from that of each member. In addition, Associated in its corporate capacity owned the land and the laundry plant, had its own employees, made purchases, borrowed money, and paid its own bills. Associated has filed federal income tax returns since 1984 and has filed Louisiana sales tax returns in connection with its linen inventory. It is true that no profit was made on the transactions to be taxed, but the sales tax statute is not drawn to tax only profitable sales, see La.R.S. 47:302 C, so the fact that no profit was made cannot be determinative of whether a sales tax is due.
In the fourth case cited by Associated, Valier Coal Company v. Department of Revenue, 11 Ill.2d 402, 143 N.E.2d 35 (1957), the parent railroad company had established its subsidiary to hold coal lands so that the parent could have an assured source of coal. The court decided that the subsidiary could not be held liable for sales taxes on the coal transfers to the parent because to do so would be at odds with a prior order of the state public utilities commission *360 whereby the subsidiary was permitted to hold coal lands and make the transfers. To determine that the transfers were taxable, the court would have had to conclude that the subsidiary was "engaged in business" when the public utilities regulatory body had permitted the transactions only because they did not constitute "engaging in business." In the present case, there is no risk of an apparent conflict between the pronouncements of two governmental agencies as regards the activities of two heavily regulated industries. Thus Valier, a truly unique case, is distinguishable. In addition, the fact that the subsidiary makes no profit was rejected by the Valier court, as it has been by this court, as a determinative factor.
In summary, except for the arguments Associated makes here to avoid a sales tax obligation, there is no instance of record in which Associated or its members have denied the separate identity of Associated. Its business has been conducted precisely in conformity with its corporate status. When a taxpayer has chosen to do business as a corporation, it must accept the tax disadvantages of that form and will not be heard to deny the separate existence of that corporation. Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406 (1940); H. Henn & J. Alexander, supra, at § 153.
Courts in other states have dealt with this or analogous issues and have decided that sales between two corporations with common owners constitute sales within the meaning of a sales tax law or similar statute. Ex parte Capital City Asphalt, Inc., 437 So.2d 1291 (Ala.1983); Rexall Drug Co. v. Peterson, 113 Cal.App.2d 528, 248 P.2d 433 (1952); Montgomery Ward v. State Department of Revenue, 628 P.2d 85 (Colo. 1981) (en banc); Superior Coal Co. v. Department of Finance, 377 Ill. 282, 36 N.E.2d 354 (1941); Bonnar-Vawter, Inc. v. Johnson, 157 Me. 380, 173 A.2d 141 (1961); Commissioner of Revenue v. Globe Auto Vending Co., 383 Mass. 886, 421 N.E.2d 1213 (1981); Central Cooling v. Director of Revenue, 648 S.W.2d 546 (Mo.1982); White Motor Corp. v. Kosydar, 50 Ohio St.2d 290, 364 N.E.2d 252 (1977); Shelburne Sportswear v. City of Philadelphia, 422 Pa. 199, 220 A.2d 798 (1966); Auto Club of Washington v. State, 27 Wash. App. 781, 621 P.2d 760 (1980); Southern States Co-op, Inc. v. Dailey, 167 W.Va. 920, 280 S.E.2d 821 (1981); H. Henn & J. Alexander, supra, §§ 149, 153.
Associated urges several additional variations of its piercing argument: that it is merely a conduit or a cooperative of its owners; that the transactions which appear to be sales of services by it to its owners were not sales but were contracts whereby the owners were cooperating, each to provide itself with its own laundry services, by pooling their resources and sharing the operating costs; and that we should determine the question whether sales tax is due based on the substance of the entire dealings between the owners and Associated rather than the form. These contentions are, in essence, restatements of the principal argument that Associated's legal personality should be disregarded, and we reject them for the same reasons that we found Associated's main argument for piercing to be without merit.
For the foregoing reasons, we conclude that Associated owes the Department sales taxes in the gross amount of $94,942.77. Although the record is not complete as to the calculation of the taxes due, the parties evidently have agreed that Associated is owed a credit by the Department, for sales taxes paid in connection with resales of linens to Associated's tax exempt members, in the amount of $46,850.38. Rather than undertaking to formulate a proper decree on an incomplete record, however, we will remand the case to the Board of Tax Appeals for the rendition of a judgment consistent with the stipulation as to the credit and this opinion.

CONCLUSION
For the foregoing reasons, the decision of the court of appeal is reversed. The case is remanded to the Board of Tax Appeals for entry of judgment consistent with this opinion.
JUDGMENT OF THE FOURTH CIRCUIT COURT OF APPEAL REVERSED. *361 THE CASE IS REMANDED TO THE BOARD OF TAX APPEALS FOR ENTRY OF JUDGMENT IN ACCORDANCE WITH THE REASONS SET FORTH.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The transactions at issue in this case were sales in form, but not in substance. In an ordinary sale of services, profits are intended, even though not always realized. Moreover, the "buyer" in the present case, in exchange for the receipt of services, became liable for all of the "seller's" expenses and obligations resulting from the laundry operations, including tax and tort liability. Except for the form of the contract, the transactions in this case had hardly any similarity to a sale. The transactions were not true sales of services and should not be taxed as such.