GEM ELECTRONICS OF MONMOUTH, INC., Plaintiff-Appellee and Cross-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—96—0181

Argued December 17, 1996.—Opinion filed February 25, 1997.—Rehearing denied March 27, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and A. Benjamin Goldgar (argued), Assistant Attorney General, of counsel), for appellant.

Douglas G. Brown, Troy A. Fodor, and E.M. Fulton, Jr., (argued), all of Douglas G. Brown, P.C., of Springfield, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In February 1990, defendant, the Illinois Department of Revenue (Department), assessed taxes on plaintiff, Gem Electronics of Monmouth, Inc. (Gem), under the Telecommunications Excise Tax Act (Telecommunications Act) (35 ILCS 630/1 through 21 (West 1992)). Gem contested the taxes, and the Department conducted an administrative hearing in September 1993. In June 1994, the Department issued a decision upholding the assessment.

In August 1994, Gem filed a complaint seeking administrative review of the Department's decision, and in January 1996, the circuit court reversed the Department's decision. The Department appeals, arguing that the court erred because (1) Gem's customers originate and receive "telecommunications," and, therefore, (2) Gem is a "retailer" pursuant to the Telecommunications Act. We agree with the Department and reverse.

## I. BACKGROUND

Gem has been engaged in electronic sales and service in Monmouth, Illinois, since 1976. As part of its business, Gem sells, maintains, and repairs mobile radio equipment, including mobile units and base stations, operates paging and mobile telephone services, and operates a "community repeater" business.

A "repeater" is a device used in connection with two-way radio

communication. Two-way radios, typically made up of a base station and mobile units, originate and receive messages on the FM band. However, they generate a relatively weak signal with a limited range. The repeater is an unattended mobile relay station which receives a signal generated by a two-way radio, processes it, strengthens it, and then retransmits it, allowing a distant two-way radio to receive the signal.

A "community repeater" is one type of shared mobile radio system. Shared systems "involve either an arrangement where the licensee offers excess capacity to unlicensed eligible users or where each user of the licensed facilities is individually licensed." *In re Implementation of Sections 3(n) & 332 of the Communications Act Regulatory Treatment of Mobile Services,* 8 F.C.C. Rec. 7988, 7990 n.12 (1993). The latter arrangement is called a "multiple-licensed system." Multiple-licensed systems may be either nonprofit cooperatives or "community repeaters," where one of the system licensees or an unlicensed third party manages the system for the other licensed users. *Implementation,* 8 F.C.C. Rec. at 7990 n.12.

The Federal Communications Commission (FCC) does not license the repeater itself, nor does the FCC license repeater operators who are not themselves mobile radio operators. Instead, the FCC requires the individual mobile radio operators to hold licenses to operate on designated frequencies. The community repeater is licensed to those individual operators. *In re An Inquiry Concerning the Multiple Licensing of Land Mobile Radio Systems ("Community Repeaters") in the Bands 806-812 and 851-866 MHz,* 71 F.C.C.2d 1391, 1392 (1979). In this case, Gem is an unlicensed third party that manages the system for the other licensed users, providing use of the repeater to a limited number of licensed mobile radio operators, based on the finite number of available "slots."

Gem's president, Ross Beedle, testified that it operated the repeater to introduce itself—and its products and services—to mobile radio operators. He also testified that, during the liability period, Gem charged the licensed operators only its costs for the repeater (including cost of construction, maintenance, and upkeep of the repeater facility), based on its belief that federal law prohibited it from making a profit. See 47 C.F.R. § 90.179 (1995). Gem charges its repeater customers a flat monthly fee, which it characterizes as "tower rent."

From August 1985 to June 1989, Gem did not register with the Department to collect, and did not collect, telecommunications excise taxes from its customers on revenues it received from its paging, mobile telephone, or repeater businesses.

In the summer and fall of 1989, the Department audited Gem for the period August 1, 1985, through June 30, 1990, and concluded that Gem should have collected taxes based on those businesses. In February 1990, the Department issued a determination of tax due and a notice of tax liability for the period August 1985 through June 1989, reflecting a total tax liability of $5,729.88, including penalties and interest. The Director of the Department subsequently revised the assessment liability period, thus reducing Gem's tax liability on the repeater business to $969.20. Gem paid this amount under protest and sought administrative review.

The Department held an administrative hearing in September 1993, at which Gem conceded that it owed the tax on the pager and mobile telephone services but contested its liability for taxes on its community repeater receipts. Following the hearing, the administrative law judge (ALJ) found that (1) Gem's repeater functioned "to receive, process[,] and enhance radio signals and then retransmit them to customers who receive the strengthened signal"; and (2) Gem's customers had paid for the repeater services, but Gem had not registered, filed returns, or paid the taxes. Based on these findings, the ALJ concluded that (1) the definition of "telecommunications" in section 2(c) of the Telecommunications Act (35 ILCS 630/2(c) (West 1992)) was "sufficiently comprehensive in its scope to encompass the radio repeater operations that are the subject of this hearing"; (2) Gem was a "retailer" responsible for collecting the tax based in part on title 86, section 495.110 of the Illinois Administrative Code (Code), which defines retailers as those who "provide radio repeater services" (86 Ill. Adm. Code § 495.110 (1996)); and (3) Gem's charges to its customers were "gross charges," as defined in section 2(a) of the Telecommunications Act (35 ILCS 630/2(a) (West 1992)). The ALJ recommended that the Department uphold the assessment against Gem.

In June 1994, the Department issued a decision adopting the ALJ's recommendation, and Gem subsequently filed a complaint for administrative review of the Department's decision. In January 1996, the circuit court reversed the Department's decision, stating as follows:

"Statute does not identify community repeater services as being within the definition of the term 'telecommunications.' Since the community repeater operations of Gem Electronics plainly do not fall within the definition of the term 'telecommunications,' they do not fall within the term 'sale at retail' and GEM Electronics is not a retailer. Therefore GEM Electronics is not required by [s]ection 5 of the [Telecommunications Act] to collect tax and remit it

to the Department. Gem Electronics owes no tax liability to the Department because Gem Electronics is not making 'sales at retail' by supplying or furnishing telecommunications or services and equipment in connection therewith. Therefore, the decision of the Department of Revenue is against the manifest weight of the evidence and is accordingly reversed."

## II. ANALYSIS

■ The Telecommunications Act provides that the Department's final administrative decisions are subject to judicial review in accordance with the Administrative Review Law (Law) (735 ILCS 5/3—101 *et seq.* (West 1992)). 35 ILCS 630/16 (West 1992). An administrative agency's decision may be reversed only if it is legally erroneous or factually against the manifest weight of the evidence. *Thomas M. Madden & Co. v. Department of Revenue,* 272 Ill. App. 3d 212, 215, 651 N.E.2d 218, 219 (1995).

In the present case, no factual dispute exists. The parties agree that Gem operated the community repeater, charged its customers (hereinafter licensees) for using the community repeater, and failed to collect taxes on those charges. Thus, the only question before this court is whether receipts for use of a community repeater are subject to taxation under the Telecommunications Act. A determination of whether something is subject to taxation pursuant to statute is solely a question of law. *Thomas M. Madden,* 272 Ill. App. 3d at 215, 651 N.E.2d at 220.

■ Findings of an administrative agency on questions of law are not binding on this court. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund,* 156 Ill. 2d 377, 381, 620 N.E.2d 1070, 1072 (1993). When the question raised on review is purely legal, an agency's interpretation should receive deference, but our review is *de novo. Thomas M. Madden,* 272 Ill. App. 3d at 215, 651 N.E.2d at 220.

■ Taxing statutes are to be strictly construed, and their language is not to be extended or enlarged by implication beyond its clear import. *Van's Material Co. v. Department of Revenue,* 131 Ill. 2d 196, 202, 545 N.E.2d 695, 698 (1989). In strictly construing the provisions of the Telecommunications Act, our primary concern is to ascertain and give effect to the legislature's intent. *Van's Material,* 131 Ill. 2d at 202, 545 N.E.2d at 698. The statutory language provides the best indicator of legislative intent, and where that language is plain and unambiguous, courts must give it effect without considering other indicia of legislative intent. *Branson v. Department of Revenue,* 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995); *First of America Bank, Rockford, N.A. v. Netsch,* 166 Ill. 2d 165, 181, 651 N.E.2d 1105, 1112 (1995).

■ Section 3 of the Telecommunications Act provides, in part, as follows:

"A tax is imposed upon the act or privilege of originating or receiving intrastate telecommunications by a person in this State at the rate of 5% of the gross charge for such *telecommunications purchased at retail* from a *retailer* by such person." (Emphasis added.) 35 ILCS 630/3 (West 1992).

Section 5 of the Telecommunications Act provides in part that the retailer shall collect the tax from the taxpayer and remit it to the Department and the tax constitutes a debt the retailer owes to the State. 35 ILCS 630/5 (West 1992).

Gem relies on *Arenson v. Department of Revenue*, 279 Ill. App. 3d 355, 359-60, 664 N.E.2d 1083, 1086-87 (1996), in which the second district declined to apply the Telecommunications Act to repeater operations in part because it interpreted section 3 of the Telecommunications Act as imposing the tax on the repeater operator each time the repeater received or sent a radio signal. Under this interpretation, the *Arenson* court concluded that section 3 would tax the repeater operator twice—each time a signal went through the repeater. The Second District Appellate Court concluded the legislature could not have intended such a result. Accordingly, it held that the tax did not apply to repeater operations. *Arenson,* 279 Ill. App. 3d at 359-60, 664 N.E.2d at 1086-87.

■ However, the language of sections 3 and 5 of the Telecommunications Act plainly indicates that the tax is imposed on the "act or privilege of" originating or receiving telecommunications through a purchase at retail. 35 ILCS 630/3, 5 (West 1992). Section 3 states that the tax will be imposed, *not* on the provider of repeater services, but on the *purchaser* of those services—that is, the licensees—based on gross charges for such purchases. The "retailer" is obligated only to collect the tax; it is not the "taxpayer." Thus, we decline to follow *Arenson.*

Section 3 of the Telecommunications Act imposes three requirements that must be met before the Department may require Gem to collect the tax from licensees who use Gem's repeater: (1) the licensees must originate or receive "telecommunications"; (2) the licensees must "purchase[ ] at retail" those "telecommunications"; and (3) Gem must be a "retailer." 35 ILCS 630/3 (West 1992).

## A. Do Licensees Originate or Receive "Telecommunications"?

■ Section 2(c) of the Telecommunications Act defines "[t]elecommunications," in part, as follows:

" 'Telecommunications,' in addition to the meaning ordinarily and popularly ascribed to it, *includes, without limitation, mes-*

*sages* or information *transmitted through use of* local, toll[,] and wide area telephone service; private line services; channel services; telegraph services; teletypewriter; computer exchange services; cellular mobile telecommunications service; specialized mobile radio; stationary two[-]way radio; paging service; or any other form of mobile and portable one-way or two-way communications; *or any other transmission* of messages or information by electronic or similar means, between or among points by wire, cable, fiber-optics, laser, microwave, radio, satellite or similar facilities." (Emphasis added.) 35 ILCS 630/2(c) (West 1992). The definition of "telecommunications" expressly includes messages or information transmitted through the use of stationary two-way radio or any form of mobile and portable one-way or two-way communications. Thus, Gem's licensees clearly are originating and receiving "telecommunications."

■ Gem agrees that the messages between the radio operators constitute telecommunications. Nevertheless, it contends that the tax does not apply in this case because *repeater services* do not constitute telecommunications. First, Gem invites this court to affirm the circuit court's conclusion that Gem is not subject to the tax because the definition of "telecommunications" does not specifically include transmissions by "community repeater." See *Arenson*, 279 Ill. App. 3d at 359, 664 N.E.2d at 1086. We note, however, that the statutory definition of "telecommunications" is not exhaustive, as indicated by the phrase "includes, without limitation," following the first clause of the definition. To accept Gem's interpretation would essentially render that phrase meaningless.

The words "include" or "including" are ordinarily terms of enlargement rather than restriction and indicate that items enumerated in a statute are not meant to be exclusive. *Paxson v. Board of Education of School District No. 87*, 276 Ill. App. 3d 912, 920, 658 N.E.2d 1309, 1314 (1995). Moreover, the statute's specific enumeration is followed by the broadly inclusive phrase, "or any other transmission of messages or information by electronic or similar means." 35 ILCS 630/2(c) (West 1992). Thus, the mere fact that repeater services are not specifically listed does not preclude them from constituting "telecommunications."

For purposes of determining whether repeater services constitute "telecommunications" subject to the tax, the relevant language of the definition of telecommunications is "transmission of messages or information by electronic or similar means, between or among points by *** radio *** or similar facilities." 35 ILCS 630/2(c) (West 1992). Gem contends that the community repeater does not provide telecom-

munications because it does not *transmit* messages. We are not persuaded.

Merriam-Webster's Collegiate Dictionary defines "transmit" as "to send or convey from one person or place to another[;] *** to send out (a signal) either by radio waves or over a wire." Merriam-Webster's Collegiate Dictionary 1255 (10th ed. 1996). The repeater does not originate messages; however, it receives a message from the originator, strengthens it, and, in turn, sends that message to its intended recipient using radio waves. Moreover, Beedle testified that the "community repeater receives and processes that signal [from mobile or base stations], strengthens it[,] and then *retransmits* that signal." (Emphasis added.) Beedle's testimony and the common understanding of a repeater's function support the conclusion that a repeater "transmits" messages or information through the use of radio facilities—that is, it provides telecommunication services.

Furthermore, both parties agree that the communications between the licensees—the originators and intended receivers of the radio messages—constitute telecommunications. It strains logic to conclude that the nature of those signals changes during the time the repeater receives and retransmits them. Common sense indicates that the repeater is a radio facility that transmits "telecommunications"; without it, Gem concedes, the communication of a message from the originator to a distant receiver would fail.

Section 2(c) of the Telecommunications Act defines "telecommunications" broadly and expressly includes transmissions between two-way radio operators. A community repeater receives, strengthens, and transmits those telecommunications. Accordingly, we hold that section 2(c) of the Telecommunications Act is sufficiently broad to encompass community repeater services.

### B. Do Licensees Make "Purchases at Retail"?

■ Section 2(j) of the Telecommunications Act defines "purchase at retail" as "the acquisition, consumption[,] or use of telecommunication through a sale at retail." 35 ILCS 630/2(j) (West 1992). The Department contends that Gem's charges to licensees constitute purchases at retail. We agree.

Gem first contends that the licensees are not making "purchases at retail" pursuant to section 2(j) of the Telecommunications Act based on its assumption that repeater services do not involve telecommunications. Because we have rejected that assumption, we need not address this argument.

Gem next contends that the licensees are not making "purchases at retail" because no "sales at retail" have occurred. Section 2(k) of

the Telecommunications Act defines "sale at retail," in part, as follows:

> " 'Sale at retail' means the transmitting, supplying[,] or furnishing of telecommunications and all services and equipment provided in connection therewith for a consideration ***." 35 ILCS 630/2(k) (West 1992).

The Department contends that Gem's repeater services enable two-way radio operators to send and receive messages; thus, it is furnishing telecommunications-related services. Gem charges for the repeater service; therefore, it is making "sales at retail."

Gem responds that its charges to licensees do not constitute "sales at retail" because the statute requires *both* the transmitting, supplying, or furnishing of telecommunications *and* services and equipment provided in connection therewith, and Gem is not doing both. This contention is based in part on Gem's belief that it "provides no telecommunications in the first place"; therefore, it does not provide any services or equipment in connection with such telecommunications, as the statutory definition of "sale at retail" requires. 35 ILCS 630/2(k) (West 1992).

We note again that we have rejected Gem's assumption that repeater services do not involve telecommunications. Furthermore, the word "and" in the definition of "sale at retail" does not act as a conjunctive; rather, the phrase "and all services and equipment provided in connection therewith" merely expands the meaning of the first phrase. 35 ILCS 630/2(k) (West 1992). That is, one cannot supply, furnish, or transmit telecommunications *without* providing some kind of telecommunications service or equipment.

Accordingly, we conclude that Gem's provision of repeater services to a licensee in exchange for a monthly charge constitutes a "sale at retail" pursuant to the Telecommunications Act. As a result of such a sale at retail, Gem provides repeater service to transmit a licensee's message to a distant recipient. Thus, the two-way radio operators are making "purchases at retail" because the repeater enables them to "consume" or "use" telecommunications.

## C. Is Gem a "Retailer"?

■ Section 2(*l*) of the Telecommunications Act defines "retailer," in part, as follows: " 'Retailer' means and includes every person engaged in the business of making sales at retail as defined in this Article." 35 ILCS 630/2(*l*) (West 1992).

The Department contends that Gem is a "retailer" because it makes sales at retail by charging its customers for repeater services which involve transmitting, supplying, or furnishing telecommunications. Gem responds that it is not a "retailer" because (1) it is not

"engaged in the business of" making sales at retail, (2) it made no profit on the repeater business, and (3) repeater services do not constitute "telecommunications." We agree with the Department.

Gem relies on two cases, *Valier Coal Co. v. Department of Revenue*, 11 Ill. 2d 402, 143 N.E.2d 35 (1957), and *Phillips v. Illinois Bell Telephone Co.*, 34 Ill. 2d 234, 215 N.E.2d 264 (1966), to support its contention that it is not "in the business of" making sales at retail. In *Valier*, a coal company was required to obtain the approval of the Illinois Public Utilities Commission before it could sell coal to its parent corporation, a railroad. The Illinois Public Utilities Commission granted approval on the condition that the coal company sell the coal at cost and exclusively to the railroad. The Department tried to impose the retailer's occupation tax on the coal company's sale of coal based on the company's being "engaged in business," but the supreme court held that such a tax was improper because the rights to make a profit and to sell to the general public are ordinary incidents of being engaged in business. *Valier*, 11 Ill. 2d at 409-10, 143 N.E.2d at 39.

Gem's contention that both rights delineated in *Valier* are absent in this case is unpersuasive. First, Gem contends the government prohibited it from making a profit on its community repeater system during the 1988-89 audit period based on title 47, section 90.179 of the Communications Act of 1934 (Communications Act) (47 C.F.R. § 90.179 (1995)). However, the Department points out that section 90.179 of the Communications Act was amended prior to the audit period to allow nonlicensed repeater operators to operate the station "either on a non-profit cost shared basis or on a for-profit private carrier basis." 47 C.F.R. § 90.179 (1995). Thus, it appears that the FCC did not prohibit Gem from making a profit on its repeater operations.

Next, Gem contends that the government limits to whom it can sell the repeater services by requiring users to be licensed. This, too, is unpersuasive. The only limitation arises from the nature of the repeater itself, which can accommodate a finite number of signals. Thus, *Valier* fails to support Gem's contention that it is not "engaged in the business of" making sales at retail.

Gem relies on *Phillips* to support its contention that the factors exempting hotels from tax liability also exist here. Specifically, Gem contends that (1) it does not own the mobile radios used by licensees to transmit and receive messages, (2) federal law prohibited it from selling a communications service in connection with its community repeater during the period of the audit, and (3) the licensees, rather than Gem, have a duty to repair, inspect, and maintain the communications equipment.

In *Phillips*, an Illinois Bell shareholder filed a complaint seeking to enjoin the company from paying a tax under the Messages Tax Act (Ill. Rev. Stat. 1961, ch. 120, pars. 467.1 through 467.15) (the predecessor to the Telecommunications Act) on the transmission of messages by customers of hotels, hospitals, clubs, and similar organizations which operate their own switchboards. The plaintiff in *Phillips* argued that Illinois Bell was exempt from the tax on the transactions in question because the hotels were reselling the telephone service. Thus, they were in the business of transmitting messages under the Messages Tax Act.

The supreme court concluded that Illinois Bell, rather than the private organizations, was in the business of transmitting messages (and therefore liable for the tax), based on three factors: (1) ownership of equipment; (2) freedom to resell the service; and (3) duty to maintain the equipment. In *Phillips*, Illinois Bell owned the equipment leading to the organization's premises *and* all equipment on the hotel premises; the hotel was prohibited from reselling the telephone service; and Bell had the duty to repair, inspect, and maintain the communications equipment.

Although *Phillips* is a Messages Tax Act case, its analysis proves useful in determining whether Gem is "engaged in the business of" making sales at retail in the present case. With regard to each of the above factors, we note first that while Gem does not own the mobile radios used by licensees, it does own the repeater itself—the subject of this litigation. Second, Gem claims that federal law prohibited it from selling a communications service based on *Multiple Licensing-Safety & Special Radio Service*, 24 F.C.C.2d 510, 519 (1970), which prohibited the sale of "packaged" services that include dispatching as well as facility rental. This case is inapposite; Gem did not seek to sell packaged services nor does the government limit Gem's rental of repeater slots. Although Gem provides repeater service to a limited number of customers, the number of slots—not the government—limits its market.

Finally, we consider the question of who operates, controls, and maintains the community repeater. Federal regulations support Gem's contention that it has no control over the repeater. According to regulations, the licensees operate the repeater (47 U.S.C. § 318 (1994)); control the frequencies; and have a duty to repair, inspect, and maintain the communications equipment (47 C.F.R. § 90.441 (1995)). However, this regulatory control appears to be a fiction. In *Land Mobile Radio Systems*, 71 F.C.C.2d at 1399, the FCC stated:

> "A basic principle in the administration of the private services is that the licensee is responsible for the operation of its system.

> The licensees of a typical community repeater, however, have *virtually no control* over the mobile relay facilities for which they are licensed. Access to equipment, frequently, is restricted by tight security in high rise buildings or is limited by remote mountain locations. As a practical matter, the licensee is being held responsible for a system that it knows very little about." (Emphasis added.).

Thus, it appears that Gem controls the repeater, although neither party presented evidence on who actually operates, controls, and maintains the repeater.

Considering the three *Phillips* factors, the evidence supports a determination that Gem is engaged in the business of making sales at retail. It owns the repeater, which it makes available to radio operators for a consideration, and it provides the radio operators with telecommunications-related services. Thus, Gem is a retailer under the Telecommunications Act.

Our analysis shows that all the requirements of section 3 of the Telecommunications Act apply in this case. Two-way radio communications constitute "telecommunications" pursuant to the Telecommunications Act. Gem's customers originate these telecommunications and Gem's community repeater receives, strengthens, and retransmits them. Without the community repeater, customers would not receive the messages. Because the repeater enables Gem's customers to receive telecommunications, Gem is supplying telecommunications-related services. Gem's customers are paying for the privilege of receiving telecommunications. Therefore, Gem is making sales at retail and it is a retailer under the Telecommunications Act. Because section 5 of the Act imposes a duty on retailers to collect the tax from its customers, Gem is liable for the tax it should have collected. Accordingly, we reverse the circuit court's decision finding that Gem has no liability under the Telecommunications Act.

### E. Attorney Fees

Gem cross-appealed, seeking an award of reasonable attorney fees and expenses under section 10—55(c) of the Illinois Administrative Procedure Act (5 ILCS 100/10—55(c) (West 1992)), on the ground that the Department exceeded its statutory authority by adopting an administrative rule that the Telecommunications Act does not authorize. Gem reasons that the Department exceeded its statutory authority when it promulgated section 495.110 of the Department's rules, which provides as follows:

> "Retailers of telecommunications are persons who engage in the business of making sales of telecommunications at retail. This includes *retailers who operate or provide radio repeater services,*

paging services, facsimile transmission services[,] and party line services. Hotels and other traffic aggregators who sell telecommunications to guests or other persons at retail are retailers of telecommunications." (Emphasis added.) 86 Ill. Adm. Code § 495.110 (1996).

Because we hold that the Telecommunications Act applies to repeater services, we deny Gem's request for attorney fees.

## III. CONCLUSION

For the reasons stated, we reverse the circuit court's judgment finding that the Telecommunications Act tax does not apply to Gem's repeater services, and we deny Gem's request for attorney fees.

Reversed.

GARMAN and KNECHT, JJ., concur.