(No. 50100.-

DU-MONT VENTILATING COMPANY, Appellee, v. THE
DEPARTMENT OF REVENUE, Appellant.

*Opinion filed November 22, 1978.*

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Stephen R. Swofford, and Gregory G. Lawton, Assistant Attorneys General, of Chicago, of counsel), for appellant.

McDermott, Will & Emery, of Chicago (Hamilton Smith and Mark L. Yeager, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This appeal involves the review of an administrative decision by the defendant, the Department of Revenue (Department), that the plaintiff, Du-Mont Ventilating Company, must pay taxes under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 440 *et seq.*) and the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.1 *et seq.*) on the cost of materials used in the

construction of the intake side of a push-pull air system installed in the Caterpillar Tractor Company's Mapleton foundry. The defendant issued a final assessment for taxes, penalties and interest in the amount of $27,457.90. On appeal, the circuit court of Peoria County affirmed. The appellate court reversed, with one justice dissenting (52 Ill. App. 3d 59). We allowed the Department's petition for leave to appeal under our Rule 315 (65 Ill. 2d R. 315).

The purchase, employment and transfer of pollution control facilities is not a purchase, use or sale of tangible personal property under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 440a) and the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.2a). Thus, the issue is whether the air system involved here is a pollution control facility for purposes of the statutory tax exemption. More specifically, the issue is whether the intake side of a system designed to clean inside air and collect the dust removed from a foundry is a pollution control facility.

The applicable statutory provisions define a pollution control facility as:

> "*** any system, method, construction, device or appliance *appurtenant thereto* sold or *used or intended for the primary purpose* of eliminating, preventing, or reducing air and water pollution as the term 'air pollution' or 'water pollution' is defined in the 'Environmental Protection Act,' *** or for the primary purpose of treating, pretreating, modifying or disposing of any potential solid, liquid or gaseous pollutant which if released without such treatment, pretreatment, modification or disposal might be harmful, detrimental or offensive to human, plant or animal life, or to property." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 120, pars. 439.2a, 440a.)

The Environmental Protection Act defines air pollution as:

> "*** the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property." Ill. Rev. Stat. 1975, ch. 111½, par. 1003(b).

The air system installed was a push-pull ventilation system. On the intake side, air is drawn through louvres in the wall of a penthouse which sits on the roof of a work area and encloses a large fan housing, motor, and belt guard. The fan pushes the air through ducts and out into the work area through an outlet in a register which directs the air towards the dust collection system 30 feet away. On the exhaust side, polluted air is pulled through hoods and then ducts to a point outside the building. The ducts carry the exhaust 45 feet into the air and then turn back into the building and terminate at the fan on the dust collector. The fan pulls the air through filter media. After leaving the filter media, the then clean air goes through the fan and discharges into the outside atmosphere.

At issue here is the disallowance of the exemption on the cost of materials used in the construction of the intake side only. Du-Mont installed part of the exhaust side and put together a dust collector furnished by Caterpillar and apparently was not taxed on materials used therein.

The undisputed testimony of witnesses for both the Department and Du-Mont was that the push-pull ventilation system could not work without both an intake and exhaust side. If the exhaust section fails to operate, the building becomes pressurized, and the intake side cannot push more air into the building. If the intake side is not working, the operation of the exhaust side largely ceases for lack of air to pull out; practically no pollutants would be exhausted. If the intake side alone is operating, it would merely blow the pollutants around inside the building. In addition, the air pushed through the registers on the intake side reduces the amount of force necessary to pull the air out on the exhaust side.

In sum, the evidence was that the intake section was part of an overall or single system for the removal of pollutants from the foundry in such a manner that they

were filtered through a dust collector. The Department's hearing disposition concluded:

> "*** [T]he evidence does show that such items are related to and connected with the Mapleton pollution control facilities, and that such facilities would not properly operate or fulfill their purpose or purposes of preventing pollution in the foundry *** without the in-take ventilating system."

The hearing disposition concluded, however, by interpreting rule 6 of article II of the Retailers' Occupation Tax Act (promulgated by the Department in 1969 pursuant to section 12 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 451)) to bar the exemption because the intake side was not a physical component of the pollution control facilities at the plant. That rule provides that:

> "This exemption includes not only the pollution control equipment itself, but also replacement parts therefor, but does not extend to chemicals used in any such equipment, to fuel used in operating any such equipment nor to any other tangible personal property which may be used in some way in connection with such equipment, but which is *not made a physical component part* of the equipment itself." (Emphasis added.)

The enabling legislation (Ill. Rev. Stat. 1969, ch. 120, par. 451) authorizes the Department to make, promulgate and enforce reasonable rules and regulations relating to the administration and enforcement of the provisions of the Retailers' Occupation Tax Act. The rule merely interprets the scope of the statutory exemption provision and as such it is entitled to some respect as an administrative interpretation of the statute, but it is not binding on the courts. See *Oscar L. Paris Co. v. Lyons* (1956), 8 Ill. 2d 590, 597-98; *Terrace Carpet Co. v. Department of Revenue* (1977), 46 Ill. App. 3d 84, 90.

Administrative rules can neither limit nor extend the

scope of a statute. (*Standard Oil Co. v. Department of Finance* (1943), 383 Ill. 136, 140.) Rule 6 is unduly restrictive in light of the statutory language and must yield to the extent it means that the intake system can be considered a pollution control facility only if it is physically attached to the exhaust and dust collector segments of the facility. The exemption applies not only to systems "used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution" but to systems "appurtenant thereto" as well. (Ill. Rev. Stat. 1975, ch. 120, pars. 439.2a, 440a.) The unrefuted evidence indicated that the intake side was essential to the operation of the exhaust side which removed the pollutants to the dust collectors. It is abundantly clear that the intake system is appurtenant, *i.e.*, appropriate or accessory to the pollution control facility. (Webster's Third New International Dictionary 107 (1971).) The intake system is an integral part of the mechanism necessary to bring the dust to the collectors and prevent its dispersal into the outside atmosphere. It is irrelevant under the statutory provision that the intake system is not physically attached to the exhaust system or the dust collectors, and the administrative rule to the contrary is void.

The system falls within the tax exemption for "any system *** used or intended for the primary purpose of eliminating" air pollution (Ill. Rev. Stat. 1975, ch. 120, pars. 439.2a, 440a). Du-Mont is not barred from receiving the benefit of the tax exemption because of testimony that the reason for installing the ventilation system was that the dust made it impossible for maintenance people and others to remain in the work area for even short periods of time without special air equipment. Du-Mont's motive for installing the system had no bearing on the primary purpose for which the system was intended and used: to remove pollutants from the foundry and prevent

their dispersal into the outside atmosphere. *Illinois Cereal Mills, Inc. v. Department of Revenue* (1976), 37 Ill. App. 3d 379, relied upon by the Department, is clearly distinguishable. There the plaintiff replaced polluting coal-fired boilers with less polluting gas-fired boilers in order to meet environmental protection requirements. The appellate court held the plaintiff was not entitled to the exemption because the primary purpose of the gas-fired boilers was to produce heat needed for the manufacturing or processing of a product rather than to abate pollution caused by the plant operation. By contrast, the hearing disposition here concluded that the intake system was an integral part of the ventilation system used to remove pollutants from the foundry. While the intake side could not alone remove contaminants from the air, the ventilation system, of which it was a part, could. The system included an intake segment, an exhaust segment, and a dust collector which prevented the release into the air outside the foundry of contaminants removed from the work areas.

The Department contends that Du-Mont presented no evidence as to reasons for installing intake systems serving the middle area of the plant and is thus entitled to no exemption for those segments. However, William Williams, vice president of Du-Mont and a mechanical engineer, testified that the air system served "approximately the middle portion of the Caterpillar plant including Pit Two" in which the system was installed to remove dust.

Du-Mont has met its burden of proving that the system fits the exemption. (See *Rotary International v. Paschen* (1958), 14 Ill. 2d 480, 487.) This conclusion is justified by the evidence presented to and the findings of fact reached by the Department's hearing disposition. Because of our conclusion that Du-Mont is entitled to the exemption since the intake side was a part of the entire ventilation system which removed dust from the foundry

and prevented its dispersal into the outside atmosphere, we need not reach the question raised by the Department of whether the exemption applies to systems wholly limited to removing pollutants from inside air. For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*