284

VAN'S MATERIAL COMPANY, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (1st Division)   No. 87—2412

Opinion filed July 25, 1988.—Modified on denial of rehearing August 15, 1988.

Gould & Ratner, of Chicago (Gerald Ratner, Louis R. Hegeman, and Jay D. Stein, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

On August 19, 1985, Van's Material Company, Inc. (plaintiff), an Illinois corporation with its principal place of business in Midlothian, and which is engaged in the production, sale and delivery of ready-mix concrete, sought a declaration that its two recently purchased ready-mix concrete trucks were not subject to the Use Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 439.1 *et seq.*) or Retailers' Occupation Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 440 *et seq.*) pursuant to their respective statutory exemptions for machinery used primarily for manufacturing tangible personal property. Plaintiff also sought in its declaratory judgment action a refund of $14,661.16 for taxes paid under protest on the trucks, each of which cost $104,722.55, to the Illinois Department of Revenue. The trial court granted summary judgment in favor of the Department and its officers (defendants), but denied plaintiff's summary judgment motion, giving substantial deference to the Department's guidelines. It is from these rulings that plaintiff appeals. For the following reasons, we reverse and remand.

Mr. Sieben Vander Wagen, Jr., plaintiff's president, described in his affidavit and deposition the process whereby ready-mix concrete is

produced. Four separate components, sand, limestone, water, and cement, are, in certain proportions, loaded into a hollow drum of the truck while on plaintiff's premises. When the loading process is complete, the components are churned in a mixer for 8 to 10 minutes during delivery to the jobsite. At the jobsite, the mixture, known as ready-mix concrete, is tested by the truck driver to ascertain its quality, particularly its water consistency. If the consistency is acceptable, the driver discharges the mixture down a chute at the direction of the contractor, who then arranges the concrete in the desired form. The mixture solidifies within 24 hours, but will not fully strengthen for at least 28 days.

■ With this process in mind, it is necessary to determine whether plaintiff's ready-mix trucks are as a matter of law subject to section 3 of the Use Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 439.3), which imposes a tax "upon the privilege of using in this State tangible personal property," and section 2 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 441) (ROTA), which imposes a tax "upon persons engaged in the business of selling tangible personal property at retail at the rate of 5% of the gross receipts." The latter section exempts from its purview proceeds from:

"[T]he sale of machinery and equipment which will be used by the purchaser, or a lessee of the purchaser, primarily in the process of manufacturing or assembling tangible personal property for wholesale or retail sale or lease ***." (Ill. Rev. Stat. 1985, ch. 120, par. 441.)

"Manufacturing process" is defined in the same section as follows:

"[T]he production of any article of tangible personal property, whether such article is a finished product or an article for use in the process of manufacturing or assembling a different article of tangible personal property, by procedures commonly regarded as manufacturing, processing, fabricating, or refining which changes some existing material or materials into a material with a different form, use or name." Ill. Rev. Stat. 1985, ch. 120, par. 441.

A similar provision in the Use Tax Act, which defines "manufacturing process" identically to that in the ROTA, provides:

"The tax imposed by this Act does not apply to the use of machinery and equipment primarily in the process of the manufacturing or assembling of tangible personal property for wholesale or retail sale or lease ***." Ill. Rev. Stat. 1985, ch. 120, par. 439.3

Plaintiff maintains that it was entitled to the benefit of this tax

exclusion because ready-mix concrete is manufactured in its ready-mix concrete trucks, and the product is ultimately sold for consumer use. As plaintiff points out, although an Illinois court of review has not yet considered the issue, courts in several other jurisdictions have done so and have concluded, based on nearly identical exclusionary provisions, that ready-mix concrete trucks are tax exempt due to the manufacturing process in which they are engaged. (*Capitol Con Crete, Inc. v. Director of Revenue, State of Missouri* (Administrative Hearing Commission July 17, 1987), No. RS—85—0259; *Valley Ready Mixed Concrete Co. v. Wisconsin Department of Revenue* (Wis. Tax Appeals Comm'n November 13, 1984), No. S—7575, Wis. Tax Rep. par. 202—471 (CCH), *aff'd* (Wis. Cir. Ct. Dane County, May 2, 1985), No. 84—CV—6724, Wis. Tax Rep. par. 202—556 (CCH); *Auxier-Scott Supply Co. v. Oklahoma Tax Comm'n* (Okla. 1974), 527 P.2d 159; *Wakefield Ready-Mixed Concrete Co. v. State Tax Comm'n* (1969), 356 Mass. 8, 247 N.E.2d 869.) While defendants attempt to draw distinctions between these decisions and Illinois law, they nevertheless are unable to cite any cases where ready-mix concrete trucks were held subject to State sales tax under a manufacturing exemption.

■ In addition to the persuasive authority cited by plaintiff, the language of the statute itself supports plaintiff's interpretation. As noted earlier, "manufacturing process" is defined broadly by both statutory provisions as "the production of any article of tangible personal property *** by procedures commonly regarded as manufacturing *** which change some existing material or materials into a different form, use, or name." Plaintiff's procedure of combining four separate materials, sand, water, limestone and cement, and changing them into a different product called ready-mix concrete clearly constitutes manufacturing pursuant to this definition.

In fact, when our supreme court considered the operation of ready-mix trucks, it concluded that they are engaged in manufacturing. In *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457 N.E.2d 9, where minimum load charges on small sales of concrete were at issue, the court noted that "[t]he plaintiff is in the business of manufacturing and selling ready-mix concrete." (98 Ill. 2d at 384, 457 N.E.2d at 11.) The court also agreed with the Department of Revenue's position "that the minimum load charge is part of the transportation cost of delivering concrete which is includable in the total cost of *manufacture*." (Emphasis added.) 98 Ill. 2d at 388-89, 457 N.E.2d at 13.

Moreover, the Illinois Department of Revenue itself took the position in a formal bulletin, issued on April 1, 1962, that "the agitation

that takes place on the truck while [ready-mix concrete] is being delivered from the seller to the job site is actually part of the manufacturing process" for purposes of taxation on transportation and delivery of the product.

■ Despite this Illinois precedent and their own bulletin indicating that ready-mix concrete is "manufactured" within the meaning of sections 2 and 3 of the ROTA and the Use Tax Act, respectively, defendants maintain that the product is not an article of tangible personal property, that the trucks are not used primarily in manufacturing, and that manufacturing can only occur at a fixed location as required by an Illinois Department of Revenue regulation. First, adopting the notion that ready-mix concrete is not tangible personal property would conflict with defendants' current taxation of the product under the ROTA which is based upon retail sales (see *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457 N.E.2d 9), defined in section 1 as "any transfer of the ownership of or title to tangible personal property." (Ill. Rev. Stat. 1985, ch. 120, par. 440.) Thus, if the statutory language of sections 1 and 2 of the ROTA and section 3 of the Use Tax Act is to be applied on a consistent basis, defendants may not properly collect both sets of revenues.

■ Equally unavailing is defendants' contention that because ready-mix is used to make driveways and foundations, it becomes real property as opposed to personal property when it hardens, and that the mixture of sand, limestone, water, and cement is not a "finished article" until it is discharged from the truck and solidifies. First, there are numerous uses for concrete, many of which are unrelated to the construction of real property. With respect to defendants' latter argument, a similar claim was rejected in *H. H. Kohlsaat & Co. v. O'Connell* (1912), 255 Ill. 271, 99 N.E. 689, where our supreme court considered whether a business that produced bakers' goods and restaurant supplies was a manufacturing corporation within the meaning of the State statute. Using dictionary definitions of "manufacture" and applying common sense, the court held that Kohlsaat was engaged in manufacturing, despite the argument that its products were not final products but were used to manufacture other products. In this regard, the court stated:

> "Raw materials may be, and often are, subjected to successive processes of manufacture, each one of which is complete in itself but several of which may be required to make the final product." (255 Ill. at 272, 99 N.E. at 690.)

Likewise, in the instant case, the four components undergo a transformation on plaintiff's trucks, each step constituting a distinct pro-

cess of manufacture resulting in the final product of ready-mix concrete.

■ Furthermore, the claim that the trucks are primarily used for delivery and not manufacturing has no foundation in the record. To the contrary, the record established that ready-mix concrete must be manufactured in the trucks rather than in "a bucket or steel container" as defendants urge so as to maintain a uniform mixture and to prevent it from hardening prior to use. In any event, according to section 130.330(d)(1) of the Illinois Administrative Code, machinery may be exempt from taxation even though it is utilized at times in a nonexempt manner. 86 Ill. Adm. Code 130.330(d)(1) (1985).

■ In making their "primary use" argument, defendants ignore the fact that when asked in interrogatory 8a whether they "contend that a redi-mix truck is used in the process of manufacturing but that it is not primarily used in the process of manufacture," they responded "no." By doing so without objection, defendants admitted that "primary use" was not at issue. See, e.g., Buehler v. Whalen (1976), 41 Ill. App. 3d 446, 355 N.E.2d 99, aff'd (1977), 70 Ill. 2d 51, 374 N.E.2d 460 (answer to interrogatory is judicial admission).

■ Finally, defendants' own regulation limiting manufacturing to a "fixed location" (86 Ill. Adm. Code 130.330(b)(3) (1985)) is unduly restrictive where the relevant statutes exclude from taxation all machinery and equipment used in the manufacturing process, not only those operating at a fixed location. Under similar circumstances, the supreme court in Du-Mont Ventilating Co. v. Department of Revenue (1978), 73 Ill. 2d 243, 248, 383 N.E.2d 197, 200, found a Department of Revenue regulation which provided that a tax exemption for pollution control activities did not extend to items which were "not made a physical component part of the equipment itself" "unduly restrictive" and "void." While noting that the regulation "is entitled to some respect as an administrative interpretation of the statute," the court nevertheless held it was not binding on the courts. (73 Ill. 2d at 247, 383 N.E.2d at 200.) In so doing, the court reasoned that "[a]dministrative rules can neither limit nor extend the scope of a statute." 73 Ill. 2d at 247-48, 383 N.E.2d at 200.

■ Defendants argue that even if this court determines that the ready-mix trucks are machines primarily involved in the process of manufacturing, the truck chassis should not be exempt from taxation because it is a separate and distinct piece of equipment which individuals "may tailor to their needs by the use of various attachments." Yet, the uncontroverted testimony of plaintiff's president established that the chassis alone could not be used for any other purpose in his

business and that he never used his ready-mix trucks for anything other than producing and delivering ready-mix concrete.

The two cases cited by defendants, one from the Colorado Department of Revenue, Revenue Determination No. 58, Reference No. DD—419 (no date in original), and the other from the State of New York Tax Commission (*In re Colonial Sand & Stone Co.* (September 3, 1982), No. TSB—H—82(101)S), which concluded that a truck chassis was not tax exempt, are inapplicable here. Both of those cases were decided pursuant to statutes which exempted machinery only if it was for use directly and exclusively in the production of tangible personal property. The statutes at issue here, however, do not have an exclusivity requirement.

■ Thus, construing the taxing statutes most strongly against the government and in favor of the taxpayer as required in cases of doubt (*Mahon v. Nudelman* (1941), 377 Ill. 331, 335, 36 N.E.2d 550, 552), plaintiff's ready-mix trucks should be excluded from taxation. According, we reverse the judgment of the circuit court of Cook County granting summary judgment in favor of defendants, and remand the cause to the trial court with instructions to enter summary judgment for plaintiff.

Reversed and remanded.

O'CONNOR and QUINLAN, JJ., concur.