ALAN ARENSON, d/b/a Almar Communications, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District    No. 2—95—0940

Opinion filed April 26, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Cacilia Reich Masover, Assistant Attorney General, of counsel), for appellant.

Peter A. Savitski, of Rockford, for appellee.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

On administrative review, the trial court affirmed in part and reversed in part a decision of the administrative hearings division of the defendant, the Department of Revenue of the State of Illinois (the Department), regarding certain taxations on the plaintiff, Alan Arenson, doing business as Almar Communications (Almar). The Department appeals that part of the trial court's ruling which reversed the decision of its hearings division. The plaintiff has not filed a cross-appeal. We affirm the trial court.

Arenson and his wife, Mary Arenson, have operated Almar, a communications business, since 1972 as sole proprietors. From 1985 through 1991, Almar provided paging services to customers. Generally, Almar purchased wholesale air time and resold it to its customers. If a customer did not own a pager, then Almar would also rent out a pager to the customer, charging the customer for both the air time and the pager.

Almar was also involved in the two-way radio business, including providing community "repeaters" to its customers. A repeater is:

"[A] two-way radio device that receives a radio signal from a customer and retransmits the signals out to that same customer again to another user, so that *** two users of a customer can talk to each other using the repeater to enhance the range."

From approximately 1975 to 1980, Almar had a telecommunications tax license, which the State used to assess a telecommunications tax on repeater services. Almar returned the license to the State after some court cases indicated that the tax on the repeater services was not valid.

In 1988, Francis Wong, an employee of the Department, met with the Arensons to conduct an audit. Despite finding an accumulation of air time and rental charges upon which Almar had not paid tax, Wong told the Arensons that he did not think that Almar had any tax liability. Wong also told Mary Arenson not to worry about the interest and penalties because the Arensons could simply protest those amounts and the interest and penalties would be thrown out by the Department.

The audit initially covered the period from August 1985 to June

1988. In December 1990, the Department assessed a telecommunications excise tax against Almar for that period. In May 1991, the Department sent Arenson a letter, informing him that the documents attached to that letter superseded documents sent previously. The documents in the May 1991 letter restricted Almar's telecommunications excise tax liability to the period from August 1988 through February 1991.

From August 1988 through February 1991, Almar billed its customers who rented pagers by listing the charges for both air time and pager rental together on the customer invoices. However, the charges for air time and pager rental were separated in Almar's records.

The telecommunications excise tax liability for the period of August 1988 through February 1991 included liability for: (1) paging services, or air time, for customers who owned their own pagers; (2) paging services, or air time, for customers who rented a pager from Almar; (3) paging services consisting of the rental charges on the pagers which Almar rented out; and (4) repeater services. Almar contested only the latter two charges. The Department also assessed a 30% penalty and interest on the amount due, which Almar also contested.

Subsequently, the Department's administrative hearings division held a hearing and prepared a recommendation for disposition, which was accepted by the Department as a final administrative decision. The administrative law judge concluded that all of the charges assessed as the telecommunications excise tax were valid, but limited the liability owed for the tax on the rental charges on the pagers which Almar rented out for the period of time after July 1, 1990. The administrative law judge found that the Department's regulation which went into effect on that date (86 Ill. Adm. Code § 495.100(b) (1994)) mandated disaggregation and separate identification of exempt and nonexempt charges on billings, or else all charges become nonexempt.

Subsequently, Almar sought administrative review of the Department's decision in the trial court. Specifically, Almar contested the assessment for tax on repeater services, the assessment for tax on the pagers which Almar had rented out, and the assessment for the corresponding penalties and interest. After a hearing, the trial court reversed the Department's decision with regard to the repeater services and the pager rental charges. The trial court affirmed the remaining taxes, plus the 30% penalty and interest on that amount. The Department timely appeals.

■ Initially, we note our standard of review. The Telecommunica-

tions Excise Tax Act (the Act) (35 ILCS 630/1 *et seq.* (West 1994)) provides that judicial review of all final administrative decisions of the Department will be in accordance with the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)). 35 ILCS 630/16 (West 1994). The Administrative Review Law states: "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3—110 (West 1994). However, the findings of the administrative agency on questions of law are not binding on this court. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 381 (1993); *Cavarretta v. Department of Children & Family Services*, 277 Ill. App. 3d 16, 21 (1996). The question of whether something is subject to taxation pursuant to a taxation statute is solely one of law. See *Thomas M. Madden & Co. v. Department of Revenue*, 272 Ill. App. 3d 212, 215 (1995). Thus, our review is *de novo*. *Thomas M. Madden & Co.*, 272 Ill. App. 3d at 215.

■ ■ We also note that in *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196 (1989), just as in the present case, the Department misapplied the law by ignoring the first step of the court's analysis—construction of the statute. *Van's Material Co.*, 131 Ill. 2d at 201-02. Instead, the Department jumps to a "second tier" of analysis—determining the boundaries of an exemption—which is not required in the case at bar. See *Van's Material Co.*, 131 Ill. 2d at 201-02. We agree with the Department that tax *exemption* statutes are to be strictly construed in favor of the taxing body and against exemption. *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 414 (1989). However, in the present case, we are not analyzing whether an exemption applies; we are analyzing whether the statute imposing the tax applies. In such a case, the law of this State is clear:

> " 'Taxing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond its clear import. In cases of doubt[,] they are construed most strongly *against the government and in favor of the taxpayer.*' " (Emphasis added.) *Van's Material Co.*, 131 Ill. 2d at 202, quoting *Mahon v. Nudelman*, 377 Ill. 331, 335 (1941).

In strictly construing the provisions of the Act, our primary rule is to ascertain and give effect to the intention of the legislature. *Van's Material Co.*, 131 Ill. 2d at 202. The language of the statute itself is the best indicator of legislative intent. *First of America Bank v. Netsch*, 166 Ill. 2d 165, 181 (1995); *Moon v. Smith*, 276 Ill. App. 3d 958, 962 (1995). If the statutory language is clear, the court must give it effect without resorting to other aids of construction (*Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995); *Moon*, 276 Ill.

App. 3d at 962) and may not read into the statute exceptions, conditions, or limitations that the legislature did not express (*Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994)). Further, rules promulgated by an administrative agency may neither limit nor extend the scope of the statute. *Du-Mont Ventilating Co. v. Department of Revenue*, 73 Ill. 2d 243, 247-48 (1978).

In the present case, we are presented with two taxation issues. The first deals with whether a tax on repeater services is valid under the Act. The second is whether a tax on the rental of pagers is valid under the Act where the communications company did not disaggregate the rental charge from the other charges on the customer invoices, but did disaggregate those charges in its own records.

■ We find that the tax on repeater services is not authorized by the Act. The definition of "telecommunications" in the Act does not specifically include repeaters, but does include:

"[W]ithout limitation, messages or information transmitted through use of *** stationary two way radio; *** or any other form of mobile and portable one-way or two-way communications; or any other transmission of messages or information by electronic or similar means, between or among points by wire, cable, fiber-optics, laser, microwave, radio, satellite or similar facilities." 35 ILCS 630/2(c) (West 1994).

The Department argues that this definition of "telecommunications" is sufficiently broad to encompass repeaters. However, the section of the Act imposing the tax provides, in relevant part:

"A tax is imposed upon the act or privilege of originating *or* receiving intrastate telecommunications by a person in this State at the rate of 5% of the gross charge for such telecommunications purchased at retail from a retailer by such person." (Emphasis added.) 35 ILCS 630/3 (West 1994).

A separate section of the Act uses similar language to impose a 5% tax on interstate communications. 35 ILCS 630/4 (West 1994). The parties agree that a repeater's purpose is to extend the range of a telecommunication device. The repeater does so by receiving a radio signal *and* retransmitting that signal. Under the terms of the Act, the 5% tax is imposed upon the act of "originating *or* receiving" communications. (Emphasis added.) 35 ILCS 630/3, 4 (West 1994). To increase a communicator's range, a repeater both "receives" *and* "originates" a radio signal. Is the customer to be taxed for each time the repeater receives a message and also for each time it retransmits that message? Clearly, our legislature must not have intended such a result. Moreover, it may also be said that a repeater neither

"receives" nor "originates" communications, for a repeater is merely a tool of redundancy. Thus, a repeater is akin to a phone cord or the device which transmits radio signals out to the receiver on a wireless phone. There has been no showing that the particular communication the repeater is involved with has not been previously taxed. In light of our requirement to construe the statute strongly in favor of the taxpayer (see *Van's Material Co.*, 131 Ill. 2d at 202) and the clear language of the Act (35 ILCS 630/3, 4 (West 1994)), we find that the terms of the Act do not impose taxation upon use of repeaters.

■ Turning to the second issue on appeal, we find that Almar complied with the Act in disaggregating the charges for the rental pagers from other charges. For both interstate and intrastate communications, the Act imposes a 5% tax of "the gross charges" for telecommunications purchased at retail. 35 ILCS 630/3, 4 (West 1994). "Gross charge" is defined in the Act to include "the amount paid *** for all services and equipment provided in connection [to the telecommunications] by a retailer." 35 ILCS 630/2(a) (West 1994). However, the Act provides that "gross charges" shall *not* include "charges for customer equipment, including such equipment that is leased or rented by the customer from any source, wherein such charges are disaggregated and separately identified from other charges." 35 ILCS 630/2(a)(4) (West 1994). The Act does not specify where the charges are to be disaggregated. See 35 ILCS 630/2(a)(4) (West 1994). Thus, the trial court was presented solely with a question of evidentiary proof as to whether or not disaggregation occurred. If Almar did not disaggregate and separately identify the charges for the rental pagers, those charges would be subject to the 5% tax. In the case at bar, the Department presented a *prima facie* case that no disaggregation had occurred by showing that Almar had not disaggregated the rental charge from other charges on the customer invoices. However, our review of the record discloses that Almar sufficiently rebutted the Department's case by showing that it had disaggregated and separately identified the rental charges in its own records. In light of our requirement to construe the statute strongly in favor of the taxpayer (see *Van's Material Co.*, 131 Ill. 2d at 202) and the silence of the Act with regard to where the disaggregation must occur (see 35 ILCS 630/2(a)(4) (West 1994)), we agree with the trial court and determine that the charges for pager rentals were sufficiently disaggregated. Consequently, Almar's pager rental charges did not constitute "gross charges" as defined in the Act. 35 ILCS 630/2(a)(4) (West 1994).

Interestingly, the administrative law judge's ruling only imposed the tax on the pager rentals from the period of time starting July 1,

1990. On that date, a regulation from the Department went into effect which stated, in part: "To be exempt, the charges for customer equipment must be disaggregated and separately identified from other charges *on the customer's billing statement.*" (Emphasis added.) 86 Ill. Adm. Code § 495.100(b) (1994). The administrative law judge found that, after the regulation went into effect, Almar could not claim uncertainty as to whether the charges had to be separated on customer billings. We are compelled to note again that the Act itself does not specify where the charges are to be disaggregated. See 35 ILCS 630/2(a)(4) (West 1994). Rules promulgated by an administrative agency may neither limit nor extend the scope of the statute. *Du-Mont Ventilating Co.*, 73 Ill. 2d at 247-48. Thus, the administrative law judge erred in holding Almar responsible for the 5% tax on the pager rental charges by interpreting the Department's regulation to extend the scope of the statute.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

INGLIS and HUTCHINSON, JJ., concur.