NO. 4-96-0181

                           IN THE APPELLATE COURT 

                                 OF ILLINOIS

                               FOURTH DISTRICT

GEM ELECTRONICS OF MONMOUTH, INC.,           )  Appeal from

          Plaintiff-Appellee and             )  Circuit Court of

          Cross-Appellant,                   )  Sangamon County

          v.                                 )  No. 94MR0253

THE DEPARTMENT OF REVENUE,                   )  

          Defendant-Appellant and            )  Honorable 

          Cross-Appellee.                    )  Donald M. Cadigan,

                                             )  Judge Presiding.

_________________________________________________________________

          PRESIDING JUSTICE STEIGMANN delivered the opinion of

the court:

          In February 1990, plaintiff, the Illinois Department of

Revenue (Department), assessed taxes on defendant, Gem Elec-

tronics of Monmouth, Inc. (Gem), under the Telecommunications

Excise Tax Act (Telecommunications Act) (35 ILCS 630/1 through 21

(West 1992)).  Gem contested the taxes, and the Department

conducted an administrative hearing in September 1993.  In June

1994, the Department issued a decision upholding the assessment. 

          In August 1994, Gem filed a complaint seeking adminis-

trative review of the Department's decision, and in January 1996,

the circuit court reversed the Department's decision.  The

Department appeals, arguing that the court erred because (1)

Gem's customers originate and receive "telecommunications;" and,

therefore, (2) Gem is a "retailer" pursuant to the Telecommunica-

tions Act.  We agree with the Department and reverse.

                              I.  BACKGROUND

          Gem has been engaged in electronic sales and service in

Monmouth, Illinois, since 1976.  As part of its business, Gem

sells, maintains, and repairs mobile radio equipment, including

mobile units and base stations, operates paging and mobile

telephone services, and operates a "community repeater" business.

          A "repeater" is a device used in connection with two-

way radio communication.  Two-way radios, typically made up of a

base station and mobile units, originate and receive messages on

the FM band.  However, they generate a relatively weak signal

with a limited range.  The repeater is an unattended mobile relay

station which receives a signal generated by a two-way radio,

processes it, strengthens it, and then retransmits it, allowing a

distant two-way radio to receive the signal.  

          A "community repeater" is one type of shared mobile

radio system.  Shared systems "involve either an arrangement

where the licensee offers excess capacity to unlicensed eligible

users or where each user of the licensed facilities is individu-

ally licensed."  In re Implementation of Sections 3(n) and 332 of

the Communications Act Regulatory Treatment of Mobile Services, 8

F.C.C. Rec. 7988, 7990 n.12 (1993).  The latter arrangement is

called a "multiple-licensed system."  Multiple-licensed systems

may be either nonprofit cooperatives or "community repeaters,"

where one of the system licensees or an unlicensed third party

manages the system for the other licensed users.  Implementation,

8 F.C.C. Rec. at 7990 n.12.  

          The Federal Communications Commission (FCC) does not

license the repeater itself, nor does the FCC license repeater

operators who are not themselves mobile radio operators.  In-

stead, the FCC requires the individual mobile radio operators to

hold licenses to operate on designated frequencies.  The communi-

ty repeater is licensed to those individual operators.  In re An

Inquiry Concerning the Multiple Licensing of Land Mobile Radio

Systems ("Community Repeaters") in the Bands 806-812 and 851-866

MHz, 71 F.C.C.2d 1391, 1392 (1979).  In this case, Gem is an

unlicensed third party which manages the system for the other li-

censed users, providing use of the repeater to a limited number

of licensed mobile radio operators, based on the finite number of

available "slots."  

          Gem's president, Ross Beedle, testified that it operat-

ed the repeater to introduce itself--and its products and servic-

es--to mobile radio operators.  He also testified that, during

the liability period, Gem charged the licensed operators only its

costs for the repeater (including cost of construction, mainte-

nance, and upkeep of the repeater facility), based on its belief

that federal law prohibited it from making a profit.  See 47

C.F.R. §90.179 (1995).  Gem charges its repeater customers a flat

monthly fee, which it characterizes as "tower rent."

          From August 1985 to June 1989, Gem did not register

with the Department to collect, and did not collect, telecommuni-

cations excise taxes from its customers on revenues it received

from its paging, mobile telephone, or repeater businesses.

          In the summer and fall of 1989, the Department audited

Gem for the period August 1, 1985, through June 30, 1990, and

concluded that Gem should have collected taxes based on those

businesses.  In February 1990, the Department issued a determina-

tion of tax due and a notice of tax liability for the period

August 1985 through June 1989, reflecting a total tax liability

of $5,729.88, including penalties and interest.  The Director of

the Department subsequently revised the assessment liability

period, thus reducing Gem's tax liability on the repeater busi-

ness to $969.20.  Gem paid this amount under protest and sought

administrative review.

          The Department held an administrative hearing in

September 1993, at which Gem conceded that it owed the tax on the

pager and mobile telephone services but contested its liability

for taxes on its community repeater receipts.  Following the

hearing, the administrative law judge (ALJ) found that (1) Gem's

repeater functioned "to receive, process[,] and enhance radio

signals and then retransmit them to customers who receive the

strengthened signal"; and (2) Gem's customers had paid for the

repeater services, but Gem had not registered, filed returns, or

paid the taxes.  Based on these findings, the ALJ concluded that

(1) the definition of "telecommunications" in section 2(c) of the

Telecommunications Act (35 ILCS 630/2(c) (West 1992)) was "suffi-

ciently comprehensive in its scope to encompass the radio repeat-

er operations that are the subject of this hearing"; (2) Gem was

a "retailer" responsible for collecting the tax based in part on

title 86, section 495.110 of the Illinois Administrative Code

(Code), which defines retailers as those who "provide radio

repeater services" (86 Ill. Adm. Code §495.110 (1996)); and (3)

Gem's charges to its customers were "gross charges," as defined

in section 2(a) of the Telecommunications Act (35 ILCS 630/2(a)

(West 1992)).  The ALJ recommended that the Department uphold the

assessment against Gem.

          In June 1994, the Department issued a decision adopting

the ALJ's recommendation, and Gem subsequently filed a complaint

for administrative review of the Department's decision.  In

January 1996, the circuit court reversed the Department's deci-

sion, stating as follows:

               "Statute does not identify community re-

          peater services as being within the defini-

          tion of the term 'telecommunications.'  Since

          the community repeater operations of Gem

          Electronics plainly do not fall within the

          definition of the term 'telecommunications,'

          they do not fall within the term 'sale at

          retail' and GEM Electronics is not a retail-

          er.  Therefore GEM Electronics is not re-

          quired by [s]ection 5 of the [Telecommunica-

          tions Act] to collect tax and remit it to the

          Department.  Gem Electronics owes no tax lia-

          bility to the Department because Gem Elec-

          tronics is not making 'sales at retail' by

          supplying or furnishing telecommunications or

          services and equipment in connections there-

          with.  Therefore, the decision of the Depart-

          ment of Revenue is against the manifest

          weight of the evidence and is accordingly

          reversed."

                               II.  ANALYSIS

          The Telecommunications Act provides that the Depart-

ment's final administrative decisions are subject to judicial

review in accordance with the Administrative Review Law (Law)

(735 ILCS 5/3-101 et seq. (West 1992)).  35 ILCS 630/16 (West

1992).  An administrative agency's decision may be reversed only

if it is legally erroneous or factually against the manifest

weight of the evidence.  Thomas M. Madden & Co. v. Department of

Revenue, 272 Ill. App. 3d 212, 215, 651 N.E.2d 218, 219 (1995).  

          In the present case, no factual dispute exists.  The

parties agree that Gem operated the community repeater, charged

its customers (hereinafter licensees) for using the community

repeater, and failed to collect taxes on those charges.  Thus,

the only question before this court is whether receipts for use

of a community repeater are subject to taxation under the Tele-

communications Act.  A determination of whether something is

subject to taxation pursuant to statute is solely a question of

law.  Thomas M. Madden, 272 Ill. App. 3d at 215, 651 N.E.2d at

220.   

          Findings of an administrative agency on questions of

law are not binding on this court.  DiFoggio v. Retirement Board

of the County Employees Annuity & Benefit Fund, 156 Ill. 2d 377,

381, 620 N.E.2d 1070, 1072 (1993).  When the question raised on

review is purely legal, an agency's interpretation should receive

deference, but our review is de novo.  Thomas M. Madden, 272 Ill.

App. 3d at 215, 651 N.E.2d at 220.

          Taxing statutes are to be strictly construed and their

language is not to be extended or enlarged by implication beyond

its clear import.  Van's Material Co. v. Department of Revenue,

131 Ill. 2d 196, 202, 545 N.E.2d 695, 698 (1989).  In strictly

construing the provisions of the Telecommunications Act, our

primary concern is to ascertain and give effect to the legisla-

ture's intent.  Van's Material, 131 Ill. 2d at 202, 545 N.E.2d at

698.  The statutory language provides the best indicator of

legislative intent, and where that language is plain and unambig-

uous, courts must give it effect without considering other

indicia of legislative intent.  Branson v. Department of Revenue,

168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995); First of

America Bank, Rockford, N.A. v. Netsch, 166 Ill. 2d 165, 181, 651

N.E.2d 1105, 1112 (1995).  

          Section 3 of the Telecommunications Act provides, in

part, as follows:

               "A tax is imposed upon the act or privi-

          lege of originating or receiving intrastate

          telecommunications by a person in this State

          at the rate of 5% of the gross charge for

          such telecommunications purchased at retail

          from a retailer by such person."  (Emphasis

          added.)  35 ILCS 630/3 (West 1992).

          Section 5 of the Telecommunications Act provides in

part that the retailer shall collect the tax from the taxpayer

and remit it to the Department and the tax constitutes a debt the

retailer owes to the State.  35 ILCS 630/5 (West 1992).

          Gem relies on Arenson v. Department of Revenue, 279

Ill. App. 3d 355, 359-60, 664 N.E.2d 1083, 1086-87 (1996), in

which the second district declined to apply the Telecommunica-

tions Act to repeater operations in part because it interpreted

section 3 of the Telecommunications Act as imposing the tax on

the repeater operator each time the repeater received or sent a

radio signal.  Under this interpretation, the Arenson court

concluded that section 3 would tax the repeater operator twice--

each time a signal went through the repeater.  The Second Dis-

trict Appellate Court concluded the legislature could not have

intended such a result.  Accordingly, it held that the tax did

not apply to repeater operations.  Arenson, 279 Ill. App. 3d at

359-60, 664 N.E.2d at 1086-87.

          However, the language of sections 3 and 5 of the

Telecommunications Act plainly indicates that the tax is imposed

on the "act or privilege of" originating or receiving telecommu-

nications through a purchase at retail.  35 ILCS 630/3, 5 (West

1992).  Section 3 states that the tax will be imposed, not on the

provider of repeater services, but on the purchaser of those

services--that is, the licensees--based on gross charges for such

purchases.  The "retailer" is obligated only to collect the tax;

it is not the "taxpayer."  Thus, we decline to follow Arenson.

          Section 3 of the Telecommunications Act imposes three

requirements that must be met before the Department may require

Gem to collect the tax from licensees who use Gem's repeater: (1)

the licensees must originate or receive "telecommunications"; (2)

the licensees must "purchase[] at retail" those "telecommunica-

tions"; and (3) Gem must be a "retailer."  35 ILCS 630/3 (West

1992).

        A.  Do Licensees Originate or Receive "Telecommunications?"

          Section 2(c) of the Telecommunications Act defines

"[t]elecommunications," in part, as follows:

               "'Telecommunications,' in addition to

          the meaning ordinarily and popularly ascribed

          to it, includes, without limitation, messages

          or information transmitted through use of

          local, toll[,] and wide area telephone ser-

          vice; private line services; channel servic-

          es; telegraph services; teletypewriter; com-

          puter exchange services; cellular mobile

          telecommunications service; specialized mo-

          bile radio; stationary two[-]way radio; pag-

          ing service; or any other form of mobile and

          portable one-way or two-way communications;

          or any other transmission of messages or

          information by electronic or similar means,

          between or among points by wire, cable, fi-

          ber-optics, laser, microwave, radio, satel-

          lite or similar facilities."  (Emphasis add-

          ed.)  35 ILCS 630/2(c) (West 1992).

The definition of "telecommunications" expressly includes messag-

es or information transmitted through the use of stationary two-

way radio or any form of mobile and portable one-way or two-way

communications.  Thus, Gem's licensees clearly are originating

and receiving "telecommunications."

          Gem agrees that the messages between the radio opera-

tors constitute telecommunications.  Nevertheless, it contends

that the tax does not apply in this case because repeater servic-

es do not constitute telecommunications.  First, Gem invites this

court to affirm the circuit court's conclusion that Gem is not

subject to the tax because the definition of "telecommunications"

does not specifically include transmissions by "community repeat-

er."  See Arenson, 279 Ill. App. 3d at 359, 664 N.E.2d at 1086. 

We note, however, that the statutory definition of "telecommuni-

cations" is not exhaustive, as indicated by the phrase "includes,

without limitation," following the first clause of the defini-

tion.  To accept Gem's interpretation would essentially render

that phrase meaningless.  

          The words "include" or "including" are ordinarily terms

of enlargement rather than restriction and indicate that items

enumerated in a statute are not meant to be exclusive.  Paxson v.

Board of Education of School District No. 87, 276 Ill. App. 3d

912, 920, 658 N.E.2d 1309, 1314 (1995).  Moreover, the statute's

specific enumeration is followed by the broadly inclusive phrase,

"or any other transmission of messages or information by elec-

tronic or similar means."  35 ILCS 630/2(c) (West 1992).  Thus,

the mere fact that repeater services are not specifically listed

does not preclude them from constituting "telecommunications."  

          For purposes of determining whether repeater services

constitute "telecommunications" subject to the tax, the relevant

language of the definition of telecommunications is "transmission

of messages or information by electronic or similar means,

between or among points by *** radio *** or similar facilities." 

35 ILCS 630/2(c) (West 1992).  Gem contends that the community

repeater does not provide telecommunications because it does not

transmit messages.  We are not persuaded.

          Merriam-Webster's Collegiate Dictionary defines "trans-

mit" as "to send or convey from one person or place to another[;]

*** to send out (a signal) either by radio waves or over a wire." 

Merriam-Webster's Collegiate Dictionary 1255 (10th ed. 1996). 

The repeater does not originate messages; however, it receives a

message from the originator, strengthens it, and, in turn, sends

that message to its intended recipient using radio waves. 

Moreover, Beedle testified that the "community repeater receives

and processes that signal [from mobile or base stations],

strengthens it[,] and then retransmits that signal."  (Emphasis

added.)  Beedle's testimony and the common understanding of a

repeater's function support the conclusion that a repeater

"transmits" messages or information through the use of radio

facilities--that is, it provides telecommunication services. 

          Furthermore, both parties agree that the communications

between the licensees--the originators and intended receivers of

the radio messages--constitute telecommunications.  It strains

logic to conclude that the nature of those signals changes during

the time the repeater receives and retransmits them.  Common

sense indicates that the repeater is a radio facility that

transmits "telecommunications"; without it, Gem concedes, the

communication of a message from the originator to a distant

receiver would fail.   

          Section 2(c) of the Telecommunications Act defines

"telecommunications" broadly and expressly includes transmissions

between two-way radio operators.  A community repeater receives,

strengthens, and transmits those telecommunications.  According-

ly, we hold that section 2(c) of the Telecommunications Act is

sufficiently broad to encompass community repeater services.

               B.  Do Licensees Make "Purchases at Retail"? 

          Section 2(j) of the Telecommunications Act defines

"[p]urchase at retail" as "the acquisition, consumption[,] or use

of telecommunication through a sale at retail."  35 ILCS 630/2(j)

(West 1992).  The Department contends that Gem's charges to

licensees constitute purchases at retail.  We agree.

          Gem first contends that the licensees are not making

"purchases at retail" pursuant to section 2(j) of the Telecommu-

nications Act based on its assumption that repeater services do

not involve telecommunications.  Because we have rejected that

assumption, we need not address this argument.

          Gem next contends that the licensees are not making

"purchases at retail" because no "sales at retail" have occurred.

Section 2(k) of the Telecommunications Act defines "[s]ale at

retail," in part, as follows:

               "'Sale at retail' means the transmit-

          ting, supplying[,] or furnishing of telecom-

          munications and all services and equipment

          provided in connection therewith for a con-

          sideration ***."  35 ILCS 630/2(k) (West

          1992).

          The Department contends that Gem's repeater services

enable two-way radio operators to send and receive messages, thus

it is furnishing telecommunications-related services.  Gem charg-

es for the repeater service, therefore it is making "sale[s] at

retail."

          Gem responds that its charges to licensees do not

constitute "sale[s] at retail" because the statute requires both

the transmitting, supplying, or furnishing of telecommunications

and services and equipment provided in connection therewith, and

Gem is not doing both.  This contention is based in part on Gem's

belief that it "provides no telecommunications in the first

place"; therefore, it does not provide any services or equipment

in connection with such telecommunications, as the statutory

definition of "sale at retail" requires.  35 ILCS 630/2(k) (West

1992). 

          We note again that we have rejected Gem's assumption

that repeater services do not involve telecommunications. 

Furthermore, the word "and" in the definition of "sale at retail"

does not act as a conjunctive; rather the phrase "and all servic-

es and equipment provided in connection therewith" merely expands

the meaning of the first phrase.  35 ILCS 630/2(k) (West 1992). 

That is, one cannot supply, furnish, or transmit telecommunica-

tions without providing some kind of telecommunications service

or equipment.

          Accordingly, we conclude that Gem's provision of

repeater services to a licensee in exchange for a monthly charge

constitutes a "sale at retail" pursuant to the Telecommunications

Act.  As a result of such a sale at retail, Gem provides repeater

service to transmit a licensee's message to a distant recipient. 

Thus, the two-way radio operators are making "purchases at

retail" because the repeater enables them to "consume" or "use"

telecommunications.

                         C.  Is Gem a "Retailer"?

          Section 2(l) of the Telecommunications Act defines "re-

tailer", in part, as follows:  "'Retailer' means and includes

every person engaged in the business of making sales at retail as

defined in this Article."  35 ILCS 630/2(l) (West 1992).

          The Department contends that Gem is a "retailer"

because it makes sales at retail by charging its customers for

repeater services which involve transmitting, supplying, or fur-

nishing telecommunications.  Gem responds that it is not a

"retailer" because (1) it is not "engaged in the business of"

making sales at retail, (2) it made no profit on the repeater

business, and (3) repeater services do not constitute "telecommu-

nications."  We agree with the Department.

          Gem relies on two cases, Valier Coal Co. v. Department

of Revenue, 11 Ill. 2d 402, 143 N.E.2d 35 (1957), and Phillips v.

Illinois Bell Telephone Co., 34 Ill. 2d 234, 215 N.E.2d 264

(1966), to support its contention that it is not "in the business

of" making sales at retail.  In Valier, a coal company was

required to obtain the approval of the Illinois Public Utilities

Commission before it could sell coal to its parent corporation, a

railroad.  The Illinois Public Utilities Commission granted

approval on the condition that the coal company sell the coal at

cost and exclusively to the railroad.  The Department tried to

impose the retailer's occupation tax on the coal company's sale

of coal based on the company's being "engaged in business," but

the supreme court held that such a tax was improper because the

right to make a profit and to sell to the general public are

ordinary incidents of being engaged in business.  Valier, 11 Ill.

2d at 409-10, 143 N.E.2d at 39.

          Gem's contention that both rights delineated in Valier

are absent in this case is unpersuasive.  First, Gem contends the

government prohibited it from making a profit on its community

repeater system during the 1988-89 audit period based on title

47, section 90.179 of the Communications Act of 1934 (Communica-

tions Act) (47 C.F.R. §90.179 (1995)).  However, the Department

points out that section 90.179 of the Communications Act was

amended prior to the audit period to allow nonlicensed repeater

operators to operate the station "either on a non-profit cost

shared basis or on a for-profit private carrier basis."  47

C.F.R. §90.179 (1995).  Thus, it appears that the FCC did not

prohibit Gem from making a profit on its repeater operations.

          Next, Gem contends that the government limits to whom

it can sell the repeater services by requiring users to be

licensed.  This, too, is unpersuasive.  The only limitation

arises from the nature of the repeater itself, which can accommo-

date a finite number of signals.  Thus, Valier fails to support

Gem's contention that it is not "engaged in the business of"

making sales at retail.

          Gem relies on Phillips to support its contention that

the factors exempting hotels from tax liability also exist here. 

Specifically, Gem contends that (1) it does not own the mobile

radios used by licensees to transmit and receive messages, (2)

federal law prohibited it from selling a communications service

in connection with its community repeater during the period of

the audit, and (3) the licensees, rather than Gem, have a duty to

repair, inspect, and maintain the communications equipment.  

          In Phillips, an Illinois Bell shareholder filed a com-

plaint seeking to enjoin the company from paying a tax under the

Messages Tax Act (Ill. Rev. Stat. 1961, ch. 120, pars. 467.1

through 467.15) (the predecessor to the Telecommunications Act)

on the transmission of messages by customers of hotels, hospi-

tals, clubs, and similar organizations which operate their own

switchboards.  The plaintiff in Phillips argued that Illinois

Bell was exempt from the tax on the transactions in question

because the hotels were reselling the telephone service.  Thus,

they were in the business of transmitting messages under the

Messages Tax Act.  

          The supreme court concluded that Illinois Bell, rather

than the private organizations, was in the business of transmit-

ting messages (and therefore liable for the tax), based on three

factors:  (1) ownership of equipment; (2) freedom to resell the

service; and (3) duty to maintain the equipment.  In Phillips,

Illinois Bell owned the equipment leading to the organization's

premises and all equipment on the hotel premises; the hotel was

prohibited from reselling the telephone service; and Bell had the

duty to repair, inspect, and maintain the communications equip-

ment.  

          Although Phillips is a Messages Tax Act case, its

analysis proves useful in determining whether Gem is "engaged in

the business of" making sales at retail in the present case. 

With regard to each of the above factors, we note first that

while Gem does not own the mobile radios used by licensees, it

does own the repeater itself--the subject of this litigation. 

Second, Gem claims that federal law prohibited it from selling a

communications service based on Multiple Licensing-Safety and

Special Radio Service, 24 F.C.C.2d 510, 519 (1970), which prohib-

ited the sale of "packaged" services that include dispatching as

well as facility rental.  This case is inapposite; Gem did not

seek to sell packaged services nor does the government limit

Gem's rental of repeater slots.  Although Gem provides repeater

service to a limited number of customers, the number of slots--

not the government--limits its market.  

          Finally, we consider the question of who operates,

controls, and maintains the community repeater.  Federal regula-

tions support Gem's contention that it has no control over the

repeater.  According to regulations, the licensees operate the

repeater (47 U.S.C §318 (1994)); control the frequencies; and

have a duty to repair, inspect, and maintain the communications

equipment (47 C.F.R. §90.441) (1995).  However, this regulatory

control appears to be a fiction.  In Land Mobile Radio Systems,

71 F.C.C.2d at 1399, the FCC stated:

               "A basic principle in the administration

          of the private services is that the licensee

          is responsible for the operation of its sys-

          tem.  The licensees of a typical community

          repeater, however, have virtually no control

          over the mobile relay facilities for which

          they are licensed.  Access to equipment,

          frequently, is restricted by tight security

          in high rise buildings or is limited by re-

          mote mountain locations.  As a practical

          matter, the licensee is being held responsi-

          ble for a system that it knows very little

          about."  (Emphasis added.)    

Thus, it appears that Gem controls the repeater, although neither

party presented evidence on who actually operates, controls, and

maintains the repeater.

          Considering the three Phillips factors, the evidence

supports a determination that Gem is engaged in the business of

making sales at retail.  It owns the repeater, which it makes

available to radio operators for a consideration, and it provides

the radio operators with telecommunications-related services. 

Thus, Gem is a retailer under the Telecommunications Act.

          Our analysis shows that all the requirements of section

3 of the Telecommunications Act apply in this case.  Two-way

radio communications constitute "telecommunications" pursuant to

the Telecommunications Act.  Gem's customers originate these

telecommunications and Gem's community repeater receives,

strengthens, and retransmits them.  Without the community repeat-

er, customers would not receive the messages.  Because the

repeater enables Gem's customers to receive telecommunications,

Gem is supplying telecommunications-related services.  Gem's

customers are paying for the privilege of receiving telecommuni-

cations.  Therefore, Gem is making sales at retail and it is a

retailer under the Telecommunications Act.  Because section 5 of

the Act imposes a duty on retailers to collect the tax from its

customers, Gem is liable for the tax it should have collected. 

Accordingly, we reverse the circuit court's decision finding that

Gem has no liability under the Telecommunications Act.  

                             E.  Attorney Fees

          Gem cross-appealed, seeking an award of reasonable

attorney fees and expenses under section 10-55(c) of the Illinois

Administrative Procedure Act (5 ILCS 100/10-55(c) (West 1992)),

on the ground that the Department exceeded its statutory authori-

ty by adopting an administrative rule that the Telecommunications

Act does not authorize.  Gem reasons that the Department exceeded

its statutory authority when it promulgated section 495.110 of

the Department's rules, which provides as follows:

               "Retailers of telecommunications are

          persons who engage in the business of making

          sales of telecommunications at retail.  This

          includes retailers who operate or provide

          radio repeater services, paging services,

          facsimile transmission services[,] and party

          line services.  Hotels and other traffic

          aggregators who sell telecommunications to

          guests or other persons at retail are retail-

          ers of telecommunications."  (Emphasis add-

          ed.)  86 Ill. Adm. Code 495.110 (1996).  

Because we hold that the Telecommunications Act applies to

repeater services, we deny Gem's request for attorney fees.

                             III.  CONCLUSION

          For the reasons stated, we reverse the circuit court's

judgment finding that the Telecommunications Act tax does not

apply to Gem's repeater services, and we deny Gem's request for

attorney fees.

          Reversed.

          GARMAN and KNECHT, JJ., concur.